# FOR PUBLICATION



ATTORNEY FOR APPELLANTS:

**C. GREGORY FIFER**
Applegate Fifer Pulliam LLC
Jeffersonville, Indiana

ATTORNEYS FOR APPELLEE:

**DOUGLAS B. BATES**
**BRUCE B. PAUL**
Stites & Harbison, PLLC
Jeffersonville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

CLARK COUNTY DRAINAGE BOARD )
and CLARK COUNTY BOARD OF )
COMMISSIONERS, )
)
    Appellants, )
)
          vs. )    No. 10A05-1102-PL-68
)
ROBERT ISGRIGG, )
)
    Appellee. )

APPEAL FROM THE CLARK SUPERIOR COURT
The Honorable Vicki L. Carmichael, Judge
Cause No. 10D01-0807-PL-595

**January 11, 2012**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

The Clark County Drainage Board ("the Drainage Board") appeals the trial court's entry of summary judgment in favor of Robert Isgrigg. The Drainage Board raises three issues for our review, which we restate as follows:

1.      Whether Isgrigg had standing in his official capacity as Clark County Surveyor to seek a declaratory judgment of his statutory rights and obligations vis-à-vis the Drainage Board with respect to two Drainage Board projects;

2.      Whether the Drainage Board acted in a manner contrary to law when it engaged in a subdivision drainage project without the participation of the County Surveyor; and

3.      Whether the Drainage Board acted in a manner contrary to law when it removed an obstruction from a natural surface watercourse without the participation of the County Surveyor.

We hold that Isgrigg, in his official capacity as County Surveyor, had standing to seek declaratory relief from the Drainage Board's actions. On the merits, we hold that the Drainage Board's subdivision project did not establish a regulated drain under the Indiana Code and, therefore, the Drainage Board was not required to utilize the County Surveyor. However, the Drainage Board's removal of an obstruction from a natural surface watercourse without the County Surveyor's participation did violate the Indiana Code. Accordingly, we affirm in part and reverse in part.

## FACTS AND PROCEDURAL HISTORY[1]

In April of 2000, the Clark County Board of Commissioners ("the Board of Commissioners" or "Commissioners") formally organized the Drainage Board by

---

[1] We note that the Clark County court reporter tendered to this court a one-volume transcript in excess of the 250-page limit stated in Indiana Appellate Rule 28(A)(6). In the future, we would appreciate the court reporter's compliance with our appellate rules.

enacting an ordinance. The Drainage Board consists of three members, with the County Surveyor acting as an additional ex officio and nonvoting member of the Drainage Board. Under Indiana law, "[e]ach regulated drain in a county is under the jurisdiction of the [drainage] board and subject to this chapter, except as otherwise provided by this chapter." Ind. Code § 36-9-27-15. Shortly after its creation, the Drainage Board enacted a policy that required drainage complaints to be filed, in writing, with the County Surveyor, who would then "review and obtain information about the complaint" and present it to the Drainage Board. Appellee's App. at 48.

In January of 2007, Isgrigg took office as the duly elected Clark County Surveyor. As County Surveyor, Indiana law conferred the following duties and responsibilities on him:

> The county surveyor is the technical authority on the construction, reconstruction, and maintenance of all regulated drains or proposed regulated drains in the county, and he shall:
>
> > (1) investigate, evaluate, and survey all regulated drains or proposed regulated drains, and prepare all reports, plans, profiles, and specifications necessary or incident to any proposed construction, reconstruction, or maintenance of regulated drains;
> >
> > (2) prepare and make public standards of design, construction, and maintenance that will apply to all regulated drains and their appurtenances, taking into consideration in preparing these standards the published recommendations made by Purdue University, the American Society of Agricultural Engineers, the American Society of Civil Engineers, the United States Department of Agriculture, the department of natural resources, the United States Army Corps of Engineers, and other reliable sources of information;
> >
> > (3) supervise all construction, reconstruction, and maintenance work performed under this chapter;

3

(4) catalog and maintain a record of all surveying notes, plans, profiles, and specifications of all regulated drains in the county, and of all mutual and private drains when available; and

(5) perform the functions set forth in sections 67 through 69 of this chapter concerning all urban drains under his jurisdiction.

In preparing plans under subdivision (1), the surveyor shall, when feasible, include the seeding of the banks of all open drains. The surveyor shall, when feasible, use United States Geological Survey data on plans and profiles prepared under subdivision (1).

I.C. § 36-9-27-29. Further, as relevant here,[2] Indiana law requires the County Surveyor to give an estimate for the cost of construction or reconstruction of a drain to the Drainage Board (with the final contract price limited to the amount of the County Surveyor's estimate plus 10%), I.C. § 36-9-27-77, and to "promptly investigate" the existence of an obstruction, if a petition is filed to the Drainage Board for removal of such obstruction from a "mutual drain," and to "report the existence of the obstruction to the [D]rainage [B]oard," I.C. §§ 36-9-27.4-1, -12.

On October 18, 2007, the Board of Commissioners passed Ordinance No. 13-2007 ("the 2007 Ordinance"). That ordinance provided as follows:

**WHEREAS**, a need exists to better identify the scope of designated duties to the [Drainage Board] in a manner that serves the best interests of Clark County citizens;

**WHEREAS**, a further need exists to authorize the Drainage Board to perform duties of inquiry, within the parameters and limitations of law, to evaluate reported "drainage problems" in the County, place them in proper context, and refer them to the appropriate agency (if any) for addressing or curing a situation when it is the responsibility of the County,

---

[2] This is not an exhaustive list of the County Surveyor's duties and responsibilities.

4

distinguished from the responsibility of private landowners or other contractors or developers;

**NOW, THEREFORE, BE IT ORDAINED** by the Board as follows:

1.  That each and every recital set forth hereinabove is made a part of this Ordinance;

2.  The scope of functions of the [Drainage Board] . . . is hereby designated to include the following additional duties and responsibilities:

> (a)  To perform inquiries into reports of drainage defects, incidents or drainage problems in the unincorporated County that is not within any remaining two-mile fringe jurisdiction of any city or town in Clark County, Indiana, regardless of when the reported event or problem arose;

> (b)  To make reasonable businesslike inquiry into situations described within subparagraph (a) above, without limitation by the date upon which the Drainage Board was formally created.

> (c)  To engage and authorize any professional persons under contract with the Drainage Board (in a contract approved by the Board of Commissioners) to render written reports of inquires made concerning the subject matter of subparagraph (a) above.

> (d)  To take official action of referral to any agency that has/had legal supervisory authority over persons, contractors or circumstances in the area where the drainage defect, drainage incident or drainage problem has been reported and has been made the subject of the written report referenced above.

> (e)  To render all technical and professional assistance, as is reasonable and necessary, to the

agency subject to the above referral, that is dedicated to the goal of reasonably and efficiently remediating the situation under inquiry to the extent it is within the legal jurisdiction of Clark County, Indiana[,] government[] and its Drainage Board pursuant to this Ordinance.

Appellants' App. at 63-64.

In July of 2008, Isgrigg filed a complaint for declaratory judgment and a permanent injunction against the Board and the Drainage Board. Isgrigg filed an amended complaint in March of 2010. According to Isgrigg's amended complaint:

1.    Isgrigg is a Clark County resident and taxpayer who is the duly elected Surveyor for Clark County . . . .

* * *

44.    In . . . responding to . . . alleged drainage problems, the Drainage Board and/or [the Board of] Commissioners have separately paid [Brian] Dixon[, a drainage engineer,] to perform drain assessments rather than deferring to Isgrigg's technical authority, opinions, cost estimates, and general expertise on drainage issues as is required, by statute, at no additional expense.

45.    The Drainage Board and/or [the Board of] Commissioners have then acted on Dixon's representations without either involving Isgrigg as required by the statutes or holding the appropriate hearings required by the statutes.

46.    In further responding to these alleged drainage problems, the Drainage Board and/or [the Board of] Commissioners have relied on Dixon's assessments and awarded contracts without inviting or requesting bids from companies qualified and desiring to perform the work.

47.    In another instance, at an additional cost to Clark County, the Drainage Board and/or [the Board of] Commissioners engaged the services of another engineering firm to draft a new drainage ordinance, and this act by the [Board of] Commissioners and/or Drainage Board was again performed without the input and technical expertise of Isgrigg.

6

48. Once Isgrigg learned about this practice by the [Board of] Commissioners and/or Drainage Board, he publicly objected on the record to the Drainage Board's failure to comply with the Indiana Code statutes governing the Drainage Board.

Id. at 343, 350-51. Isgrigg then asked the trial court to declare the respective roles of the County Surveyor and the Drainage Board and to enjoin the Board of Commissioners and the Drainage Board "from acting in any way that contravenes the Indiana Code." Id. at 355.

In between the filing of his original complaint and the filing of his amended complaint, Isgrigg filed three separate requests for a temporary restraining order ("TRO") against the Drainage Board under the same cause number. In his first request, Isgrigg sought to prevent the Drainage Board "from paying or ordering another county official [to pay] any bills for work ordered by the Drainage Board including . . . $8,800 to Team Contracting of Memphis." Id. at 66. Isgrigg further alleged that

the Drainage Board authorized paying Team Contracting of Memphis $8,800 to perform certain work ["the Lancassange Creek project"] without any involvement or approval by Isgrigg, and after the work was allegedly completed[] the Drainage Board ordered the bill to be paid without first having Isgrigg review the work performed and approve of the payment.

Id. at 67. The trial court held a hearing on the first TRO request on July 15. However, presumably because the complained-of work had already been completed, the trial court simply instructed "[a]ll parties [to] recognize procedures in the statute 36-[9]-27.4 et seq. and abide by those procedures." Id. at 2.

On October 14, 2008, Isgrigg filed his second motion for a TRO. In that motion, Isgrigg sought to enjoin the Drainage Board "from entering into a contract for work on the Sunset Hills Subdivision [("the Sunset Hills project")] . . . in violation of Indiana

7

Code . . . ." Id. at 174. Specifically, Isgrigg alleged that the Board of Commissioners had entered into an agreement with homeowners who reside in the Sunset Hills Subdivision ("Sunset Hills"), and that, pursuant to that agreement, the Drainage Board would perform certain drainage work "in accordance with . . . Indiana law." Id. at 175. According to the Sunset Hills agreement, the Board of Commissioners authorized the Drainage Board to engage a private sector contractor in "a contract to perform the work[, which] shall be awarded in accordance with the procurement requirements of Indiana law, including without limitation IC 36-1-12, et seq. [pertaining to public works projects], IC 36-9-27, et seq., and IC 36-9-27.4, et seq. [Indiana's drainage laws]." Id. at 263. Isgrigg interpreted the agreement to specifically require the Drainage Board to comply with Indiana's drainage laws for the Sunset Hills project and, as such, he executed an express waiver "of any objection to either the terms of the foregoing agreement or the adoption of a Resolution by the [Board of Commissioners] in accordance with the terms thereof in a manner intended to fully and finally resolve drainage complaints regarding Sunset Hills." Id. at 265.

However, according to Isgrigg, the Drainage Board did not comply with the Indiana Code during the Sunset Hills project. Rather, the Drainage Board called a special meeting, without first mailing notice to Isgrigg,

> to award a contract to a private sector company to perform the contemplated drainage work . . . and [to] pay for that work from the County General Drain Improvement Fund[, which is limited to (1) the constructing or reconstructing of a regulated drain and (2) the removal of obstructions from drains].

8

Id. at 175-76. These actions, Isgrigg continued, violated his statutory duty to review and approve drainage work and undermined the Indiana Code's requirement that the Drainage Board "utilize Isgrigg's expertise and defer to his technical advice and cost estimates before hiring others to perform any work upon drains." Id. at 177. Isgrigg further alleged that the Drainage Board's actions damaged him both as County Surveyor and generally as a Clark County taxpayer. Id. at 178.

The trial court held an evidentiary hearing on Isgrigg's second TRO motion the next day. Following that hearing, the court concluded:

> I'm going to allow the [D]rainage [B]oard to accept, but not open[,] these bids from these contractors that are going to be here in twenty minutes and I'm going to ask the [D]rainage [B]oard to then tender those to the [C]ommissioners to review . . . . But I see no irreparable harm in letting those bids be tendered to the [D]rainage [B]oard today and the [D]rainage [B]oard then forwards them to the [C]ommissioners for their review.

Transcript at 151-52.

Thereafter, on November 6, 2008, Isgrigg filed a third motion for a TRO. In his third motion, Isgrigg sought to enjoin the Board of Commissioners "from awarding a contract for the performance of drainage work" in the Sunset Hills project. Appellants' App. at 211. According to Isgrigg, after the trial court permitted the Board of Commissioners to review the submitted bids following his second request for a TRO, the Board of Commissioners then "failed to evaluate the bid it selected to ensure that it was within 10% of Isgrigg's estimate." Id. at 214. Isgrigg further alleged that the Drainage Board "has paid numerous claims that are unrelated to drain construction or reconstruction or obstruction work from the General Drain Improvement Fund." Id. at 215.

9

The trial court held a hearing on Isgrigg's third TRO request the same day he filed it. The next day, the trial court entered findings of fact and conclusions thereon denying Isgrigg's request. According to the court:

2. The subject contract with Triplett Striping, Inc. d/b/a TSI Paving ("TSI") was admitted into evidence by stipulation of the parties, and provides in pertinent part for (a) the construction of certain drainage improvements based on plans prepared by Brian Dixon, a registered professional engineer [who] was retained by the Drainage Board, and (b) payment to TSI in the base amount of $17,810.00 (the "Contract").

3. The Contract was based on a competitive quote submitted by TSI in accordance with the provision of IC 36-1-12-5(i) [regarding public works projects].

4. The Contract was favorably recommended to the [Board of] Commissioners by unanimous vote of the voting members [of] the Drainage Board at its regular meeting on November 5, 2008.

5. Isgrigg, as the duly elected and serving County Surveyor, . . . is opposed to the Contract on the ground that the work to be performed therein was not determined, designed, or let in a manner consistent with the County Surveyor's designated powers and duties as provided in IC 36-9-27, et seq., and/or IC 36-9-27.4, et seq.

6. The [Board of] Commissioners and the Drainage Board submitted evidence into the record of this proceeding without objection by Isgrigg, however, that conclusively demonstrates that the [Board of] Commissioners had properly delegated authority to the Drainage Board to proceed with the work called for in the Contract pursuant to the provisions of [the 2007 Ordinance] and that such authorization was further ratified by the [Board of] Commissioners' legislative enactment of Resolution [No.] 6-2008 . . . .

7. In accordance with the requirements of Resolution No. 6-2008, the work to be performed under the Contract is based on a petition filed by the affected property owners that expressly states that it is not a petition to establish a regulated or public drain under either 36-9-27, et seq., and/or 36-9-27.4, et seq.

8. The letting of the Contract was further expressly authorized by a written agreement to which Isgrigg, by counsel, had waived any objection.

10

9.     The Drainage Board presented probative evidence that it had received a petition and obtained easements in proper form as required by the [sic] Resolution No. 6-2008, and that the Contract had been let in accordance with the provisions of IC 36-1-12-5, a statute applicable to Indiana public works projects.

10.     IC 36-9-27, et seq., pertains to regulated drains subject to the jurisdiction of the Drainage Board.

11.     Isgrigg has failed to present any probative evidence that the work to be performed under the Contract is of a nature that would result in the establishment of a regulated drain.

12.     IC 36-9-27.4, et seq., pertains to the removal of obstructions from mutual drains . . . or natural surface watercourses . . . .

13.     Isgrigg has failed to present any probative evidence that the work to be performed under the Contract is to remove an obstruction in either a mutual drain or natural surface watercourse . . . .

Id. at 221-23 (emphases added). The court further concluded that the local ordinances under which the Drainage Board had acted were valid under the Indiana Home Rule Act, Indiana Code Sections 36-1-3-1 to -9. Isgrigg did not appeal the court's order and, subsequently, the Sunset Hills project was completed.

On July 2, 2009, the Drainage Board filed a motion for summary judgment. Isgrigg filed his response and cross-motion thereafter. On September 14, 2009, the trial court dismissed the Board of Commissioners from this action.[3] More than a year later, the trial court, with a new judge, entered summary judgment for Isgrigg. In its order, the court stated:

3.     Homeowner Tamara Ross bought a home in Sunset Hills subdivision in the autumn of 2004. During the summer of 2007, Ms. Ross contacted

---

[3] Although the Board of Commissioners had been dismissed from the trial court proceedings and it does not participate in this appeal, all parties have been named in the caption because a party of record in the trial court is a party on appeal. App. R. 17(A); see, e.g., Simpson v. OP Prop. Mgmt., LLC, 939 N.E.2d 1098, 1101 n.1 (Ind. Ct. App. 2010).

11

Brian Dixon, a licensed engineer in the [S]tate of Indiana, concerning drainage problems with surface water on her property.

4. Mr. Dixon investigated the drainage issues on Ms. Ross' property and suggested what improvements should be made to the Drainage Board. At this time, [Isgrigg] filed a motion for a [TRO] to enjoin the construction of improvements on Ms. Ross' property in violation of Indiana's Drainage [laws] . . . . The Court denied the motion. The Drainage Board then erected a drainage system under the supervision and advice of Mr. Dixon in the Sunset Hills subdivision . . . .

5. Lancassange Creek is a natural watercourse in Clark County. Private property owners along Lancassange Creek made oral requests to Brian Dixon and the Drainage Board to clear an obstruction of Lancassange Creek and/or perform bank work. No one filed a written petition for Drainage Board assistance. No hearing was held on the Lancassange Creek project.

6. Without any input from the County Surveyor, Mr. Dixon sought and received bids for work at Lancassange Creek, and the Drainage Board awarded one of the bids. As a result, the Lancassange Creek project was part of the lawsuit filed by Mr. Isgrigg as well.

7. [Isgrigg] filed suit . . . seeking declaratory relief by asking the Court to clarify [Isgrigg's] duties and responsibilities under [Indiana's drainage laws] and a permanent injunction requiring the Drainage Board to follow [the Indiana Code] in the future.

* * *

2. [Isgrigg's] rights to perform his elected duties under Indiana law, as well as his reputation within the community as a successful surveyor, have been damaged by the actions of the Defendant Drainage Board. [Isgrigg] identifies with particularity an instance in which the Drainage Board actions fall within the purview of the Drainage Code and has standing to seek relief sought in his Complaint.

* * *

4. The drains at issue located in the Sunset Hills subdivision and the Lancassange Creek [area] qualify under the [Indiana Code's] definition of a regulated drain. . . . The installation of the drainage system at Sunset Hills constitutes the establishment of a regulated drain . . . .

12

5.      Home Rule authority applies . . . to grant governmental units such as the Defendant Board of Commissioners as an executive body:   1) all powers granted it by statute and 2) all other powers necessary or desirable in the conduct of its affairs, even though not granted by the statute.

6.      The power to over-ride state law is not a power granted to the Board of Commissioners . . .   Therefore, regulated drains are controlled by Indiana state statute, not county ordinance, and the Home Rule Authority does not apply to protect the Defendants' actions from liability.

7.      As regulated drains, I.C. 36-9-27 et seq. and I.C. 36-9-27.4 et seq. applies, and [Isgrigg's] responsibilities and duties as outlined in I.C. 39-9-27-29 should not be hindered or circumvented by the Defendants' actions.

Id. at 10-12 (emphasis added).  In addition to its declaratory judgment for Isgrigg, the court awarded Isgrigg "his costs," which totaled $171.10.  Id. at 13  This appeal ensued.

## DISCUSSION AND DECISION

### Standard of Review

The Drainage Board contends that the trial court erred when it granted summary judgment to Isgrigg.  Our standard of review for summary judgment appeals is well established:

When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court.  Considering only those facts that the parties designated to the trial court, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment a matter of law."  In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party.  The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

13

Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269-70 (Ind. 2009) (citations omitted). The party appealing from a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. Knoebel v. Clark County Superior Court No. 1, 901 N.E.2d 529, 531-32 (Ind. Ct. App. 2009). Where the facts are undisputed and the issue presented is a pure question of law, we review the matter de novo. Crum v. City of Terre Haute ex rel. Dep't of Redev., 812 N.E.2d 164, 166 (Ind. Ct. App. 2004).

### Issue One:  Standing

The Drainage Board first asserts that Isgrigg is without standing to maintain his action against the Drainage Board. Standing is defined as having a "sufficient stake in an otherwise justiciable controversy." Ind. Civil Rights Comm'n v. Indianapolis Newspapers, Inc., 716 N.E.2d 943, 945 (Ind. 1999). The point of the standing requirement is to insure that the party before the court has a substantive right to enforce the claim that is being made in the litigation. Pence v. State, 652 N.E.2d 486, 487 (Ind. 1995). Standing is "a significant restraint on the ability of Indiana courts to act, as it denies the courts any jurisdiction absent an actual injured party participating in the case." Id. at 488. Moreover:

> The standing requirement mandates that courts act in real cases, and eschew action when called upon to engage only in abstract speculation. An actual dispute involving those harmed is what confers jurisdiction upon the judiciary:
>
>> For the disposition of cases and controversies, the Court requires adverse parties before it. Standing focuses generally upon the question whether the complaining party is the proper person to invoke the Court's power. However, more fundamentally, standing is a restraint upon this Court's

14

> exercise of its jurisdiction in that <u>we cannot proceed where there is no demonstrable injury to the complainant before us</u>.

<u>Id.</u> (emphasis original; quotation omitted). In order to have standing, the challenging party must show adequate injury or the immediate danger of sustaining some injury. <u>Ind. Civil Rights Comm'n</u>, 716 N.E.2d at 945 (citing <u>Pence</u>, 652 N.E.2d at 488).

> Under the Uniform Declaratory Judgments Act:
>
> Any person interested under a deed, will, written contract, or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

I.C. § 34-14-1-2. "The word 'person' wherever used in this chapter shall be construed to mean any person, partnership, limited liability company, joint stock company, unincorporated association, or society, or municipal or other corporation of any character whatsoever." I.C. § 34-14-1-13. The Drainage Board does not argue or otherwise suggest that a county surveyor is not a "person" under Indiana Code Section 34-14-1-13 and, as such, we do not consider that question. <u>See</u> Ind. Appellate Rule 46(A)(8)(a); <u>Watson v. Auto Advisors, Inc.</u>, 822 N.E.2d 1017, 1027-28 (Ind. Ct. App. 2005) (stating, "[w]hen parties fail to provide argument and citations, we find their arguments are waived for appellate review"), <u>trans. denied</u>. Rather, the Drainage Board's only assertion on appeal is that the actions complained about do not have an "effect upon the rights, status[,] or other legal relationships" of Isgrigg. <u>See</u> <u>City of Hobart v. Town of Merrillville</u>, 401 N.E.2d 726, 728 (Ind. Ct. App. 1980).

15

Although Isgrigg has not properly captioned his filings, the Drainage Board does not dispute that Isgrigg filed his complaint against it in his official capacity as County Surveyor. It is well established in Indiana that "[w]e examine pleadings and treat them according to their content rather than their caption." Stodtmen v. Integrity Builders, Inc., 668 N.E.2d 279, 284 (Ind. Ct. App. 1996), trans. denied. Here, Isgrigg, as County Surveyor, sought to have the trial court declare his duties and responsibilities under the Indiana Code vis-à-vis the Drainage Board in light of two particularly identified circumstances in which the Drainage Board had exercised authority.[4] And Isgrigg held his official capacity throughout the trial court proceedings and entry of judgment. While Isgrigg is no longer the County Surveyor, he has not prosecuted this appeal—the Drainage Board has—and the Drainage Board has not asked this court to strike Isgrigg's appellate filings for lack of representative capacity.[5] See App. R. 46(A)(8)(a).

The bulk of the Drainage Board's appellate argument on Isgrigg's standing is simply a two-page-long quote from this court's opinion in City of Mishawaka v. Mohney, 156 Ind. App. 668, 297 N.E.2d 858 (1973). In that case, the City of Mishawaka

---

[4] We reject the Drainage Board's assertion that Isgrigg did not sufficiently identify to the trial court the circumstances in which he alleged the Drainage Board had illegally exercised authority, namely, the Sunset Hills project and the Lancassange Creek project. Moreover, in his summary judgment materials to the trial court, Isgrigg expressly limited his claims to those two projects. See Appellant's App. at 300-02. Thus, insofar as Isgrigg attempts to raise additional issues for the first time on appeal, we do not consider them. See Dunaway v. Allstate Ins. Co., 813 N.E.2d 376, 387 (Ind. Ct. App. 2004) ("Issues not raised before the trial court on summary judgment cannot be argued for the first time on appeal and are waived."). Alternatively, Isgrigg does not cite to relevant parts of the record to support the suggestion that he raised any claim other than the two projects in his summary judgment materials to the trial court, and we will not undertake the burden of combing the record on his behalf. See App. R. 46(A)(8)(a).

[5] Based on our holding that Isgrigg had standing before the trial court in his official capacity, we need not consider his alternative arguments that he has standing as an individual. We also note that, under Appellate Rule 17(C)(2), Isgrigg was required to file a notice with the clerk of this court "of the succession in office." App. R. 17(C)(2). He has not done so. However, that failure "shall not affect the party's substantive rights." Id.

16

("Mishawaka"), through its duly elected representatives, enacted several ordinances relating to the production, sale, distribution, and exhibition of pornographic materials. Mishawaka then filed an action for declaratory judgment on the validity of its own ordinances. Joining Mishawaka's action were its mayor, city clerk, and common council. Named defendants included the Indiana Attorney General and Harry Mohney, an alleged owner and operator of an area bookstore and theater. The trial court dismissed Mishawaka's action for lack of standing.

We affirmed on appeal. We first noted that, under the Uniform Declaratory Judgments Act, the " 'person bringing the action must have a substantial present interest in the relief sought, such as there must exist not merely a theoretical question or controversy but a real or actual controversy . . . .' " Id. at 860 (quoting Zoercher v. Agler, 202 Ind. 214, 221, 172 N.E. 186, 189 (1930)). We then applied the law as follows:

> Under the present circumstances, the alleged controversy is more theoretical than actual. No instance involving implementation of the ordinances has been brought to our attention. It is uncertain that Mohney is actually the owner of the bookstore and theater at present and the situation which Mishawaka fears might arise from enforcement is purely hypothetical.
>
> * * *
>
> For a municipality to seek a declaratory judgment concerning the constitutional validity of its own freely enacted laws is virtually unprecedented. . . . [T]he apparent unorthodoxy and unreasonableness of a similar course may have dissuaded many who would most ardently supplicate a court's determination. Moreover, for a municipality to enact ordinances and forthwith implore a court to rule upon their validity appears, at best, incongruous. To construe the Uniform Declaratory Judgment[s] Act as according such a right of action to a governmental body would foster legislative irresponsibility and constrain the courts to review every questionable ordinance enacted in this State.

17

* * *

> . . . Moreover, it is not apparent in what manner the 'rights, status or other legal relations' of Mishawaka or of its elected officials have been adversely affected by its own deliberate enactment.

Id. at 860-61 (citations omitted).[6]

This court's decision in City of Mishawaka is inapposite here. The instant facts are not equivalent to those of a city seeking to have a court issue an advisory opinion on the validity of the city's ordinances in the absence of a discernible controversy. Rather, Isgrigg, as County Surveyor, alleged that the Drainage Board had denied him his statutory rights and obligations based on the manner in which the Drainage Board had handled the Sunset Hills project and the Lancassange Creek project. In other words, the County Surveyor has alleged a demonstrable injury under the Uniform Declaratory Judgments Act. Accordingly, he has standing to seek a declaration under that Act, and we decline the Drainage Board's request to reverse the trial court's judgment based on the purported lack of standing.

### Issue Two: Whether the Sunset Hills Project Created or Improved a Regulated Drain

The Drainage Board next contends that the Sunset Hills project did not involve a regulated drain and, therefore, that its exercise of authority over that drain was authorized by local ordinance and Indiana's Home Rule Act. Isgrigg, however, contends that the

---

[6] The Drainage Board's one-sentence reference to Indiana Fireworks Distributors Ass'n v. Boatwright, 741 N.E.2d 1262 (Ind. Ct. App. 2001), expressly adopted, 764 N.E.2d 208 (Ind. 2002), is not supported by cogent argument and is therefore waived. App. R. 46(A)(8)(a). We note, however, in that case the Indiana Supreme Court held that "it would be incongruous to hold that state agencies have no right of action [under the Uniform Declaratory Judgments Act] . . . but then allow agency officials to bring identical actions." 764 N.E.2d at 210. There is no suggestion or other argument in this appeal that a County Surveyor is a state official.

Drainage Board did exercise authority over a regulated drain in the Sunset Hills project. Thus, he continues, the Drainage Board acted illegally when it did not allow him to participate in that project.

The crux of this issue is whether the Drainage Board exercised authority over a regulated drain without the participation of the County Surveyor as required by statute. As stated above, under Indiana law "[e]ach regulated drain in [the] county" is subject to the jurisdiction of the Drainage Board. I.C. § 36-9-27-15. A "regulated drain" is defined by Indiana law as "an open drain, a tiled drain, or a combination of the two."[7] I.C. § 36-9-27-2. An "open drain" is "a natural or artificial open channel that: (1) carries surplus water; and (2) was established under or made subject to any drainage statute." Id. Private and mutual drains are generally not encompassed by Indiana Code Chapter 36-9-27, although an owner affected by a private or mutual drain may petition the Drainage Board to convert that drain into a regulated drain. See I.C. §§ 36-9-27-18, -19. In relevant part, private drains and mutual drains are drains that are "not established under or made subject to any drainage statute." See I.C. § 36-9-27-2.

In support of its motion for summary judgment, the Drainage Board designated Dixon's deposition testimony. There, Dixon testified that, at the time the Drainage Board entered into the Sunset Hills project, there were no channels, open or otherwise, on the properties in question. Rather, surface water was flowing and collecting onto the subject properties. Due to the collection of surface water, the affected homeowners contacted Dixon. The homeowners also publicly complained at a meeting of the Drainage Board.

---

[7] There is no dispute that the Sunset Hills project did not involve a tiled drain.

In response, the Drainage Board "wanted to take action to rectify" the homeowners' problem, and it "constructed a drainage system in Sunset Hills" to implement "drainage improvements." Appellant's App. at 232, 275-76. Dixon testified that those improvements consisted of creating a swale, which collected water away from the properties in question. Id. at 235, 286.

The Drainage Board also designated Isgrigg's deposition testimony. In his deposition, Isgrigg testified "the County has no responsibility" for "platted subdivisions." Id. at 244. Instead, "it was placed upon the Homeowner's Association to do the maintenance, not only on the roadways, but the drainage and everything else associated with it." Id. Isgrigg further testified that, before the Drainage Board will accept a "dedication of a detention basin . . . , the Drainage Board demands an easement around that," but "there was no easement" for the Sunset Hills project. Id. at 244, 248.

In his response to the Drainage Board's summary judgment motion and in support of his own motion, Isgrigg designated a petition filed by the Sunset Hills homeowners to the Drainage Board. According to that petition, the homeowners requested the Drainage Board to construct drainage improvements in the subdivision. However, the homeowners expressly stated that "[t]his is not a petition to establish a public drain under the provisions of IC 36-9-27, et seq. . . ." Appellee's App. at 11. Isgrigg further designated the affidavit of Charles L. Bevington, a state-approved course instructor for land surveyors and a registered course instructor for drainage issues.[8] According to Bevington, the Sunset Hills' homeowners petition could only be a petition to establish a

_____

[8] While the Drainage Board's request to strike Bevington's affidavit is well taken, we need not decide that issue given our disposition.

public drain under Indiana law and, therefore, the homeowners' express disclaimer had no legal merit. In light of that evidence, Isgrigg claimed that the Drainage Board's improvements in Sunset Hills constituted a regulated drain under the Indiana Code. Isgrigg also claimed that, under local ordinance, the original subdivision plat required approval by the Drainage Board, thereby establishing the subdivision's drainage system under "any statute." Id. at 306.[9] We cannot agree.

We hold that the Drainage Board's designated evidence is a prima facie showing that there are no genuine issues of material fact, and Isgrigg's designated evidence does not show facts that would create a genuine issue of material fact. In order for Indiana Code Chapter 36-9-27 to apply to the Drainage Board, the drain in question must be a regulated drain. See I.C. § 36-9-27-15. A regulated drain, in turn, requires an open channel, and the Drainage Board's evidence shows that there were no open channels in the Sunset Hills subdivision either before or after its involvement in the Sunset Hills project. A swale is not a regulated drain.

Isgrigg's designated evidence, in short, asserts that the Drainage Board lacks legal authority to do anything other than work on regulated drains. Therefore, he continues, either the Sunset Hills project created a regulated drain or the approval of the subdivision in itself established a regulated drain. And Isgrigg asserts that Clark County's ordinances limit the Drainage Board's authority only to the authority expressly granted to the Board under the Indiana Code.

---

[9] Isgrigg claims that Sunset Hill's drainage system was established under "any statute." Appellants' App. at 306. This is an inaccurate characterization of the what the law requires. Rather, Indiana Code Section 36-9-27-2 requires a "regulated drain" to be "established under . . . any drainage statute." (Emphasis added.)

We cannot agree with Isgrigg. The Indiana Code unmistakably defines a regulated drain as an "open channel." I.C. § 36-9-27-2. Absent such a feature, there is no regulated drain. And without a regulated drain, it is irrelevant whether the Drainage Board's approval of a subdivision plat sought to establish a regulated drain, although the lack of drainage easements within the Sunset Hills subdivision strongly suggests that the mere approval of the subdivision plat was not an attempt to establish a regulated drain.

Further, the 2007 Ordinance plainly grants the Drainage Board the authority to act in situations not provided for under the Indiana Code. We reject Isgrigg's logic that, if the Drainage Board acts under that authority, any such acts ipso facto establish a regulated drain and thereby require the Drainage Board to follow the regulated drain provisions of the Indiana Code. Indiana Code Section 36-9-27-15 states that "[e]ach regulated drain in a county is under the jurisdiction" of the Drainage Board. The statute does not state that the Drainage Board's jurisdiction is limited to regulated drains.

Accordingly, there is no genuine issue of material fact that the Drainage Board's activities in the Sunset Hills project did not implicate Indiana's regulated drain statutes, and the Drainage Board is entitled to judgment as a matter of law on this issue.

### Issue Three: Whether the Drainage Board had Authority to Remove an Obstruction in the Lancassange Creek Project

Finally, we consider whether the trial court properly granted summary judgment to Isgrigg in light of the Drainage Board's involvement in the Lancassange Creek project. As an initial matter, we note that the trial court granted summary judgment to Isgrigg on this issue on the theory that the Drainage Board's involvement in the Lancassange Creek project established a regulated drain. The parties never suggested as much. Rather, this

22

dispute involves whether the Drainage Board cleared an obstruction from a natural surface watercourse without properly utilizing the County Surveyor under Indiana Code Chapter 36-9-27.4.

The parties' designated evidence for the Lancassange Creek project is not as developed as it is for the Sunset Hills project. For our purposes, we note that there is no dispute that Lancassange Creek had an apparent obstruction and that the Drainage Board removed that obstruction without the participation of the County Surveyor. Pursuant to Indiana Code Section 36-9-27.4-12:

> (a) If a petition filed under this chapter alleges the obstruction of:
> (1) a drain; or
> (2) a natural surface watercourse;
> the county surveyor of the county in which the obstruction is alleged to exist shall promptly investigate whether the obstruction exists.
>
> (b) If the county surveyor, upon investigation, finds an existing obstruction in a drain or natural surface watercourse in the location alleged in the petition, the county surveyor shall report the existence of the obstruction to the drainage board.
>
> (c) Upon receiving a report from the county surveyor under subsection (b), the drainage board shall:
> (1) set a date for a hearing on the petition; and
> (2) serve notice of the hearing on each owner of the land on which the obstruction exists who can be identified in the records of the county recorder.
>
> (d) The hearing must be held at least thirty (30) days but less than ninety (90) days after the date of the filing of the petition.
>
> (e) Notice of a hearing must be mailed to each respondent with return receipt requested.

In its motion for summary judgment to the trial court, the Drainage Board's sole argument justifying its actions in the Lancassange Creek project was that the Board of

Commissioners had a legal duty, pursuant to a contract with the United States Army Corps of Engineers, to keep Lancassange Creek free from obstructions. The Drainage Board then made vague references to Indiana's Home Rule Act, on the apparent theory that the Board of Commissioners had empowered the Drainage Board to act on the Commissioners' behalf with respect to the contract to maintain Lancassange Creek.

However, the Drainage Board also designated the deposition of Ralph Guthrie, a Clark County Commissioner. According to Guthrie's testimony, the Board of Commissioners never "passed any sort of ordinance delegating that duty from the Commissioners to the Drainage Board." Appellant's App. at 259. Guthrie further testified that any party concerned about an obstruction in Lancassange Creek "should have c[o]me to the Commissioners" rather than the Drainage Board. Id. Finally, Guthrie testified that he had only learned about the Drainage Board's work on the Lancassange Creek project after that work had been completed.

On appeal, the Drainage Board concedes that, "[a]bsent these contractual obligations, the Drainage Board acknowledges that the work in Lancassange Creek should properly have been administered in accordance with the provisions of Ind. Code § 36-9-27.4, et seq." Appellant's Br. at 5 n.5. The Board of Commissioners did not authorize the Drainage Board to act on the Commissioners' behalf with respect to Lancassange Creek. Absent such an authorization, we fail to see how the Board of Commissioners' contractual obligations were imputed to the Drainage Board. Accordingly, as the Drainage Board says, the contractual obligations alleged were, in fact, "[a]bsent," see id., and we accept the Drainage Board's concession that it violated

24

the provisions of Indiana Code Chapter 36-9-27.4.[10]  Thus, we agree with the Drainage Board that it should have acted "in accordance with the provisions of Ind. Code [Chapter] 36-9-27.4" with respect to the Lancassange Creek project, see id., and there is no genuine issue of material fact precluding the entry of summary judgment for Isgrigg on this issue.

**Conclusion**

In sum, we hold that Isgrigg had standing in his capacity as County Surveyor to seek declaratory relief regarding his statutory rights and obligations vis-à-vis the Drainage Board with respect to the Sunset Hills project and the Lancassange Creek project.  We further hold that the trial court erred when it concluded that either project was based on or resulted in the establishment of a regulated drain, and that the trial court erred when it granted summary judgment to Isgrigg with respect to the Sunset Hills project.  On that issue, the Drainage Board is entitled to judgment as a matter of law.

However, Isgrigg is entitled to summary judgment as a matter of law on his claim that the Drainage Board acted contrary to the provisions of Indiana Code Chapter 36-9-27.4 when it engaged in the Lancassange Creek project without the participation of the County Surveyor.  Thus, we affirm the trial court's summary judgment for Isgrigg on that issue.  Because we hold that each party was entitled to a partial grant of summary

---

[10]  In denying Isgrigg's third request for a TRO, the trial court concluded that he had "failed to present any probative evidence that the work [on the Lancassange Creek project was] to remove an obstruction in either a mutual drain or natural surface watercourse."  Appellants' App. at 223.  And, on appeal, Isgrigg acknowledges that the Drainage Board's designated evidence shows that "the Lancassange Creek work consisted more of bank repair on private property than the actual removal of an obstruction . . . ."  Appellee's Br. at 8.  Nonetheless, the Drainage Board did not argue in its summary judgment motion, and it does not argue on appeal, that its work on the Lancassange Creek project was outside the scope of Indiana Code Chapter 36-9-27.4.  As such, we limit our review to the argument actually presented by the Drainage Board, namely, whether its activities in the Lancassange Creek project were authorized by the Board of Commissioners.

judgment, we vacate the trial court's award of costs to Isgrigg and order the parties to pay their own costs.  Thus, we affirm in part and reverse in part.

Affirmed in part and reversed in part.

RILEY, J., and MAY, J., concur.