Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Mar 18 2014, 9:40 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANTS:

**T. JOSEPH WENDT**
Barnes & Thornburg LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**MICHAEL A. KSENAK**
Martinsville, Indiana

**D. MICHAEL BOWMAN**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CECIL KOGER and KOGER'S, INC., | ) | |
| | ) | |
| Appellants-Defendants, | ) | |
| | ) | |
| vs. | ) | No. 55A01-1305-CT-187 |
| | ) | |
| T&C, INC., d/b/a I-70 WRECKER SERVICE, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MORGAN SUPERIOR COURT
The Honorable G. Thomas Gray, Judge
Cause No. 55D01-0702-CT-51

**March 18, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**NAJAM, Judge**

# STATEMENT OF THE CASE

Cecil Koger ("Cecil") and Koger's, Inc. (collectively referred to as "Koger") bring this interlocutory appeal from the trial court's order on summary judgment, in which the court granted in part and denied in part Koger's motion for summary judgment on certain claims of T&C, Inc., d/b/a I-70 Wrecker Service ("T&C"). Koger raises three issues for our review, which we consolidate and restate as the following two issues:

1. Whether the trial court erroneously permitted T&C to amend its complaint during the summary judgment proceedings; and

2. Whether the trial court erred when it denied Koger's motion for summary judgment on T&C's various tort claims.

On cross-appeal, T&C raises a single issue for our review, which we restate as whether the trial court's denial of T&C's motion for the trial court to enter an order pursuant to Indiana Trial Rule 56(D) is properly before us in this interlocutory appeal.

We affirm.

# FACTS AND PROCEDURAL HISTORY

On February 4, 2009, T&C filed its amended complaint for damages against Koger. In relevant part, the amended complaint alleged as follows:

4. [Cecil] is the former owner of property located at 9680 N. Littlepoint Road, Stilesville, Indiana 46180 (hereinafter referred to as [the] "Property").

5. On September 5, 2000, Koger['s, Inc.] . . . entered into a lease agreement with [T&C] on the Property for a term commencing September 5, 2000[,] and ending on September 5, 2005. . . .

6. Contemporaneously with the execution of said Lease, [T&C] and Koger's, Inc. entered into an option to purchase said real estate. . . .

7.     Paragraph 8 of the Option to Purchase Real Estate says in relevant part:

> If Purchaser fails to exercise its option to purchase and pay the purchase price in full, Purchaser shall return to Vendor all items purchased from Vendor in a separate Contract for the Purchase of Equipment.

8.     Contemporaneously with the execution of said documents, [T&C] and Koger's Inc. also entered into a "Contract for Purchase for Truck Parts[,"] . . . .

9.     The purchase price of the truck parts was $50,000.00.

10.    Koger's, Inc. was paid in full for the purchase of said parts on June 19, 2006.

11.    Contemporaneously with the execution of said documents, [T&C] and Koger's, Inc. entered into a Contract for Purchase of Tires . . . .

12.    The purchase price of said tires was $122,873.32.

13.    The tires were purchased in full by [T&C] on October 3, 2002.

14.    Contemporaneously with the execution of said documents, [T&C] and Koger's, Inc. also entered into a Contract for the Purchase of Equipment . . . .

15.    The purchase price of said equipment was $423,000.00.

16.    The equipment was paid in full by [T&C] on August 5, 2005.

17.    Paragraph 8 of the Contract for Purchase of Equipment states:

> If Purchaser fails to exercise its option to purchase real estate, executed contemporaneously herewith, that shall be considered a default of this contract and all equipment shall be sold back to Seller for one dollar ($1.00).

18.    Pursuant to the terms of the Lease, the monthly rental amount was $1,250.00 per month.

19.    Pursuant to the terms of the Lease, each month of the lease term began on the 5th day of each month.

20.     Rhetorical paragraph 3 of said Lease, entitled "Surrender and Hold Over[,"] states in part:

> 3.  SURRENDER AND HOLD OVER
>
> . . . if tenant shall remain in possession of all or any part of the Leased Premises after the expiration of the term of this Lease, with the consent of the Landlord, then the Tenant shall be a lessee from month to month **at the same rental** and subject to all of the other applicable covenants, terms and conditions hereof. ([E]mphasis added[.])

21.     The parties did not execute any lease agreement after the expiration of the original Lease on September 5, 2005[;] therefore [T&C] continued to pay the sum of $1,250.00 per month in rent as a month-to-month lessee.

22.     Rhetorical paragraph 13 of said Lease, entitled "Events of Default[,"] states in part as follows:

> 13.  EVENTS OF DEFAULT
>
> Any of the following shall be deemed an Event of Default:
>
> A.   The failure to pay any installment of rent when same becomes due and the failure continues for ten (10) days.

23.     At the time the Option to Purchase Real Estate was to be exercised, the parties orally agreed that[,] until [T&C] was able to complete the financing for the purchase of property, [T&C] would continue to pay the sum of $12,000.00 per month.

24.     On July 24, 2005, shortly before the date that the option to purchase real estate was to be exercised in September of 2005, Charles Blaschke, the sole shareholder in [T&C], was involved in an automobile accident in which he suffered severe trauma brain injury.

25.     Charles Blaschke was in a coma for some three (3) months and[,] on October 7, 2005[,] his daughter, Mandy Blaschke (now Mandy Broyles) was appointed guardian of his person and his estate.

26.     The unforeseen tragic event of July 24, 2005[,] and the incapacity of the sole shareholder of [T&C] resulted in time[-]consuming difficulties in obtaining financing for the purchase price of the real estate.

4

27. [T&C] and Koger's, Inc. orally agreed to modify the option to purchase the real estate because of the circumstances.

28. Since the month[-]to[-]month lease amount was $1,250.00, and since the purchase price of the truck parts, tires and equipment had previously been paid in full, the remaining $10,750.00 was the orally agreed upon monthly payment which would be applied to the purchase price of the Property . . . .

29. [T&C] and [Cecil] had a meeting in July of 2006 at which [Cecil] agreed to a reduction in the purchase price of the real estate from $1,077,000.00 to $1,000,000.00, with the continued payments of $12,000.00 per month.

30. [T&C] made good faith efforts to secure financing, resulting in an oral commitment to [Cecil] on December 15, 2006[,] to consummate the real estate transfer.

31. A letter from Ron Spence, [T&C's] former counsel, was sent to [Cecil] and Koger's, Inc. on or about January 4, 200[7,] memorializing [T&C's] intent to close the transaction and demanding a survey and title search be ordered by Koger's, Inc.

32. Neither [Cecil] nor Koger's, Inc. responded to [T&C's] January 4, 200[7,] correspondence.

33. [T&C] continued to pay and Koger's, Inc. continued to accept the $12,000.00 monthly payments from September 6, 2005[,] through January 5, 2007.

34. At no time prior to February 1, 2007[,] did [Cecil] or Koger's, Inc. notify [T&C] that [Cecil] and Koger's, Inc. did not intend to continue to accept the $12,000.00 payments from [T&C] pursuant to the agreement . . . .

35. But for Koger's representations as set forth . . . above, [T&C] would not have continued to pay $10,750.00 per month in addition to $1,250.00 per month rent.

36. At no time prior to February 1, 2007[,] did [Cecil] or Koger's, Inc. notify [T&C] that [they] intended to convey the real estate to another party.

37.     On February 1, 2007, Koger and Tim Harris . . . , owner of Property Leasings, Inc.[,] entered the leased premises and informed [T&C] that Koger had conveyed the [P]roperty to Property Leasings, Inc.

Appellants' App. at 35-39.

In light of those factual allegations, T&C alleged the following causes of action: Count I:  breach of contract; Count II:  wrongful forfeiture; Count III:  conversion; Count IV:  theft; Count V:  criminal mischief; Count VI:  criminal trespass; Count VII:  treble damages; Count VIII:  constructive fraud; Count IX:  rescission of contracts; Count X: action for money had and received; and Count XI:  fraud.

On March 23, 2012, T&C filed a motion for partial summary judgment on its rescission claim, which was based on Indiana's Statute of Frauds.  The court held a hearing on T&C's motion and, on October 23, 2012, the court granted T&C's motion in part (the "October 23, 2012, Order" or the "Rescission Order").  Specifically, the court concluded as follows:

> The Statute of Frauds voids the Option to Purchase Contract because there was no legal description of the land.

> The Contract to purchase the vehicles cannot stand on a voided contract in paragraph 8 of that contract.

> [Koger]'s continued acceptance of the payments for the vehicles is an unjust enrichment by [Koger].

> [T&C] takes nothing by the voiding of the Option to Purchase contract.

> [T&C's] rights all exist under the payments made for the contract for purchase of equipment.

> [T&C] has paid and over paid [sic] for the equipment.  The voiding of the options to purchase creates an inequitable situation for [T&C] in that [T&C] paid for and over paid [sic] for equipment it could never receive under a void contract.

6

Therefore, [the] Court grants summary judgment as to Count IX of [the] complaint.

[The] Court grants Summary Judgment to [T&C] in part on Count X. [T&C] must prove what value it paid for that it did not receive a benefit for.

[Koger] has a right to have consideration for the value [T&C] had in using the vehicles, the depreciation of the vehicles by use and the fair market value if rented, or leased value if those vehicles for the period of time the vehicles were in [T&C's] possession.

Id. at 97-98. Following the court's entry of the October 23, 2012, Order, T&C moved to have the court enter findings pursuant to Indiana Trial Rule 56(D) based on Koger's failure to dispute certain allegations in T&C's motion for summary judgment (the "Rule 56(D) motion"). See Appellee's App. at 112-22.

On November 15, 2012, Koger filed a new motion for partial summary judgment.[1] According to Koger, the court's "October 23, 2012[,] Order has made all counts of T&C's amended complaint, except for [C]ount [X], moot. Even assuming the facts as T&C pleads them, every claim depends upon the existence of a contract right, which the Court has determined never existed." Appellants' App. at 101. Koger then explained how the Rescission Order affected each of T&C's claims. See id. at 103-106.

In response, T&C asserted that "the remaining counts are based upon tortious conduct and not breach of contract. Breach [of] contract is not a tort." Id. at 186. T&C also designated a June 13, 2006, letter from its former attorney, Ron Spence, to Cecil that purported to memorialize the parties' oral modification of the written agreements, in

---

[1] The Indiana Supreme Court recently clarified that a prior entry on summary judgment may not be reconsidered under Indiana Trial Rule 54(B), but the court did not prohibit the filing of a successive motion for summary judgment under Rule 56. See Mitchell v. 10th and The Bypass, LLC, ___ N.E.2d ___ (Ind. 2014).

7

which T&C would continue to pay $12,000 per month while T&C sought financing to purchase the property. According to that letter, the parties anticipated the financing to take ninety days. Koger sold the land to Harris about sixty days after Spence wrote his letter.

In its reply, Koger repeated its assertion that the Rescission Order nullified T&C's remaining claims. See id. at 298-301. Koger also asserted that T&C's designation and reliance on the June 13, 2006, letter, was, in effect, a new argument not supported by T&C's pleadings. Id. at 302-03. Koger further argued that the June 13, 2006, letter did not evidence an oral modification of the parties' written contracts but, rather, "at best shows that [Cecil] agreed he would not sell the property out from under T&C as long as the parties were moving toward a sale of the property in a reasonable time." Id. at 303. Koger also added that T&C's criminal mischief claim failed to allege a deceptive statement by Koger or a pecuniary loss by T&C. See id. at 304-06. Koger made no other arguments to the trial court in support of its motion for partial summary judgment.

On February 14, 2013, the trial court granted Kroger's motion for summary judgment in part and denied it in part (the "February 14, 2013, Order"). Specifically, the court stated as follows:

1. [T&C's] Count I [breach of contract] is restricted to the lease contract only.

2. The Court denies [Koger's] Motion for Summary Judgment as to the theory of Count II [wrongful forfeiture. T&C] is possibly due back monies paid to [Koger] but on [a] theory other than forfeiture.

3. This case is not now a breach of the original contract by the Court's prior ruling. Therefore, a tort can apply to [T&C's] claim. Counts III [conversion] and IV [theft] are identical in theory[;] therefore,

8

[the] Court grants [Koger's] Motion for Summary Judgment as to Count IV Theft.

4.  [The] Court denies Summary Judgment as to Count V [criminal mischief]. The issue of any deception by [Koger] is an issue for the ultimate trier of fact.

5.  [Koger's] Motion as to Count VI Trespass is denied. [T&C] had [a] leasehold with right of quiet enjoyment on February 1, 2007.

6.  Count VII [treble damages] is a remedy under Count III and Count VI and, therefore, not a separate Count. [Koger's] Motion for Summary Judgment is granted as to the separate Count VII, but not as to an available remedy under Counts III and VI.

7.  The action of [Koger] signing a contract for sale of the property to Harris and still accepting payments from [T&C] for the purchase price of the contract creates an issue of a knowing present or past issue of fact such that [Koger's] Motion for Summary Judgment on Counts VIII [constructive fraud] and XI [fraud] are not appropriate and[,] therefore, denied.

8.  The Court takes no action on Counts IX [rescission] and X [money had and received] with the present . . . motion.

Id. at 22-23. That same day and by separate order, the court denied T&C's Rule 56(D) motion. The court then certified the February 14, 2013, Order on summary judgment for interlocutory appeal, which we accepted.

## DISCUSSION AND DECISION

### Standard of Review

Koger appeals the February 14, 2013, Order, in which the trial court denied in part Koger's motion for partial summary judgment. Our standard of review for summary judgment appeals is well established:

When reviewing a grant of summary judgment, our standard of review is the same as that of the trial court. Considering only those facts that the parties designated to the trial court, we must determine whether there is a

9

"genuine issue as to any material fact" and whether "the moving party is entitled to a judgment a matter of law." In answering these questions, the reviewing court construes all factual inferences in the non-moving party's favor and resolves all doubts as to the existence of a material issue against the moving party. The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law; and once the movant satisfies the burden, the burden then shifts to the non-moving party to designate and produce evidence of facts showing the existence of a genuine issue of material fact.

Dreaded, Inc. v. St. Paul Guardian Ins. Co., 904 N.E.2d 1267, 1269-70 (Ind. 2009) (citations omitted). The party appealing from a summary judgment decision has the burden of persuading this court that the grant or denial of summary judgment was erroneous. Knoebel v. Clark Cnty. Superior Ct. No. 1, 901 N.E.2d 529, 531-32 (Ind. Ct. App. 2009).

Although Koger makes numerous arguments on appeal, we organize those arguments under the following two issues: whether T&C relied on an unpleaded theory in response to Koger's motion for partial summary judgment, and whether the trial court erred when it denied Koger's motion with respect to T&C's tort claims. We also address T&C's argument on cross-appeal that the trial court's February 14, 2013, Order failed to comply with Trial Rule 56(D).

**Issue One:  Whether T&C Relied on an Unpleaded Theory**

We first address Koger's contention that T&C's reliance on the June 13, 2006, letter, which purported to memorialize the oral modification of the written contracts between Koger and T&C, amounted to a new factual basis for T&C's claims and, thus, was the equivalent of amending the complaint during the summary judgment proceedings. This argument is baseless. The amended complaint plainly states that T&C

and Koger "orally agreed to modify the option to purchase the real estate," Appellant's App. at 38, and T&C's claims allege that Koger engaged in tortious behavior when it ignored the oral agreement. The June 13, 2006, letter supports T&C's pleadings and claims and was not the equivalent of an amendment to the complaint during the summary judgment proceedings. We affirm the trial court's rejection of Koger's argument on this issue.

**Issue Two:  Whether the Trial Court Erred When It
Partially Denied Koger's Motion for Summary Judgment**

Overview

Koger also asserts that it was entitled to summary judgment on T&C's tort claims for numerous reasons. In particular, Koger makes the following arguments on appeal: (1) T&C's conversion claim must fail in light of the October 23, 2012, order; (2) T&C's criminal mischief claim must fail because this claim failed to allege a deceptive statement by Koger or a pecuniary loss by T&C; (3) T&C's criminal trespass claim must fail because it is an attempt to criminalize a bona fide contract dispute; (4) T&C waived any trespass claim pursuant to the terms of the parties' agreements; (5) T&C's trespass claim with respect to the equipment must fail in light of the October 23, 2012, order; (6) T&C's constructive fraud claim is impermissibly based on the contracts and does not establish a duty Koger owed to T&C outside of those contracts; (7) T&C's fraud claim is based on the failure of the original written contract to include a written description of the land, which does not demonstrate that Koger committed fraud against T&C; (8) T&C's fraud claim fails to identify special damages pursuant to Trial Rule 9(G) and, in any event, is

11

no longer valid since T&C elected to rescind the contract; and (9) T&C's wrongful forfeiture claim is duplicative of its claim for money had and received.

Koger isn't done. Under another point heading, Koger makes the following additional arguments: (10) the June 13, 2006, letter does not evidence an oral modification of the parties' written contracts; (11) T&C's June 13, 2006, letter demonstrates an oral modification of a contract that was required to be in writing and, therefore, the oral modification does not satisfy the Statute of Frauds; (12) T&C's conversion claim fails because T&C "cannot identify a determinate sum converted by Koger," Appellant's Br. at 21; (13) T&C's criminal mischief claim fails because the oral modification of the contracts was not a "false or misleading written statement," id. at 22; (14) the designated evidence fails to show that Koger "misrepresented anything" to support the criminal mischief claim, id. at 23; (15) the June 13, 2006, letter does not establish a past or existing fact misrepresented by Koger and, therefore, T&C's fraud claim must fail; and (16) T&C's claims for fraud and constructive fraud do not demonstrate that T&C suffered any damages.[2]

Although T&C diligently responds to Koger's arguments, we are under no such burden. The vast majority of Koger's arguments on this issue have not been preserved for appellate review. As we have explained, "[i]ssues not raised before the trial court on summary judgment cannot be argued for the first time on appeal and are waived."

---

[2] To be sure, in different parts of its brief Koger repeats some of its arguments, and to the extent we may have missed an argument within this litany, such arguments are waived for lack of cogency. Further, although Koger makes an occasional passing comment that contract claims cannot be restyled as tort claims, Koger does not support those comments with cogent reasoning on the facts of this case, and we will not make those arguments on Koger's behalf. See Ind. Appellate Rule 46(A)(8)(a); see also JPMCC 2006-CIBC14 Eads Parkway, LLC v. DBL Axel, LLC, 977 N.E.2d 354, 363-66 (discussing the relationship between contract law and tort law).

Dunaway v. Allstate Ins. Co., 813 N.E.2d 376, 387 (Ind. Ct. App. 2004). In other words, a party may not raise "additional issues for the first time on appeal" from the trial court's summary judgment order. Clark Cnty. Drainage Bd. v. Isgrigg, 963 N.E.2d 9, 19 n.4 (Ind. Ct. App. 2012), aff'd on reh'g, 966 N.E.2d 678.

Here, aside from Koger's argument that T&C relied on an unpleaded theory and evidence, Koger raised three issues to the trial court in support of its motion for partial summary judgment: (A) whether the Rescission Order nullified T&C's tort claims; (B) whether the June 13, 2006, letter demonstrated an oral modification of the parties' written contracts; and (C) whether T&C's criminal mischief claim failed to allege a deceptive statement by Koger or a pecuniary loss by T&C. Those three arguments are also raised on appeal—see arguments (1), (2), and (10) above. And although Koger's assertion that the Rescission Order nullifies T&C's tort claims is clearly raised only with respect to T&C's conversion claim, it is arguably raised with respect to T&C's criminal trespass, constructive fraud, and fraud claims. Accordingly, these are the only arguments we will address in this appeal. The remainder of Koger's arguments were not preserved for appellate review and are waived. See id.

## A. The Effect of the Rescission Order

We first address Koger's assertions that summary judgment is appropriate on T&C's claims for conversion, criminal trespass, constructive fraud, and fraud because each of those claims is founded on the rescinded written agreements between Koger and T&C. In particular, Koger asserts that T&C cannot demonstrate conversion or criminal trespass because Koger did not convert or trespass onto the property "of another person."

13

See Ind. Code §§ 35-43-2-2(a)(4) (criminal trespass), -4-3(a) (conversion). Koger cites no authority for the proposition that a Rescission Order automatically nullifies a claim of conversion or criminal trespass. Indeed, we have held that the tort of conversion may stand independent of a contract claim if "the plaintiff . . . show[s] that the defendant was aware that there was a high probability that its control over the property was unauthorized." Dean V. Kruse Found., Inc. v. Gates, 932 N.E.2d 763, 769 (Ind. Ct. App. 2010), trans. denied. But Koger does not discuss this authority. Thus, Koger's argument here is not supported by cogent reasoning or citations to authority, and it is waived. Ind. Appellate Rule 46(A)(8)(a).

The same result holds for Koger's argument that the Rescission Order automatically nullifies T&C's claim of constructive fraud. Koger asserts that the Rescission Order demonstrates that Koger did not owe a duty to T&C, as required for a claim of constructive fraud. See, e.g., Morgan Asset Holding Corp. v. CoBank, ACB, 736 N.E.2d 1268, 1273 (Ind. Ct. App. 2000). But, again, T&C cites no authority for its proposition that a Rescission Order automatically nullifies such claims. Koger's argument is waived. App. R. 46(A)(8)(a).

And Koger has waived its argument that T&C's fraud claim is nullified by the Rescission Order. On this claim, Koger asserts that T&C had an election of remedies between fraud and rescission, and T&C chose rescission. See Grissom v. Moran, 154 Ind. App. 419, 434-35, 292 N.E.2d 627, 628-29 (1973). But this election of remedies does not nullify the claimant's fraud claim if the claimant seeks special damages. Id. While Koger argues on appeal that T&C has not properly pleaded special damages, it did

14

not make that argument to the trial court and, in any event, we have held that the failure to properly plead special damages is not a bar to recovering them. Ind. & Mich. Elec. Co. v. Terre Haute Indus., Inc., 507 N.E.2d 588, 601 (Ind. Ct. App. 1987), trans. denied. Koger's argument on this issue fails.

## B.  Whether the June 13, 2006, Letter Demonstrated an Oral Modification of the Agreements

We next consider Koger's argument that the June 13, 2006, letter did not demonstrate an oral modification of the parties' written contracts. But Koger stated to the trial court that the June 13, 2006, letter "shows that [Cecil] agreed he would not sell the property out from under T&C as long as the parties were moving toward a sale of the property in a reasonable time." Appellants' App. at 303. In other words, Koger conceded to the trial court that the June 13, 2006, letter supports T&C's claims. In any event, Koger's argument on this question does not demonstrate which, if any, of T&C's claims would be precluded if Koger's argument on appeal were correct. As such, Koger's argument here is not supported by cogent reasoning and is waived. App. R. 46(A)(8)(a).

## C.  T&C's Criminal Mischief Claim

Finally, we address Koger's contentions that T&C's criminal mischief claim fails to allege a deceptive statement by Koger or a pecuniary loss by T&C. To show criminal mischief, T&C must show that Koger "knowingly or intentionally cause[d] [T&C] to suffer pecuniary loss by deception . . . ." See I.C. § 35-43-1-2(a)(2). Koger's attack of this claim is without merit.

15

Koger asserts that criminal mischief requires reliance on a written statement. But the criminal mischief statute, Indiana Code Section 35-43-1-2(a)(2), does not state that reliance on a written statement is required. Rather, the statute prohibits certain acts of "deception." Id. Koger thus contends that the criminal mischief statute incorporates the crime of deception, which for our purposes occurs when one "knowingly or intentionally makes a false or misleading written statement with intent to obtain property . . . ." I.C. § 35-43-5-3(a)(2). Such acts of deception are Class A misdemeanors. Id. Criminal mischief as alleged by T&C, however, is a base offense of a Class B misdemeanor. I.C. § 35-43-1-2. The penalty increases as the pecuniary loss suffered increases. See id.

Koger's contention that criminal mischief incorporates and expands upon the crime of deception is, in effect, a contention that deception is a lesser included offense of criminal mischief. Koger cites no Indiana authority for this proposition, and the two federal district court decisions Koger does cite either do not support Koger's assertion, see Means v. Ameriquest Mortg. Co., 2:06-CV-409-TLS, 2012 WL 4831657, at *15-*16 (N.D. Ind. Oct. 9, 2012), or do not actually discuss their rationale insofar as their conclusion might support Koger's assertion, see Meridian Fin. Advisors, Ltd. v. Pence, 1:07-CV-995-LJM-TAB, 2010 WL 3947507, at *8 (S.D. Ind. Oct. 7, 2010). We decline to follow either of these federal decisions. It would be nonsense for the General Assembly to have made deception a Class A misdemeanor while also making it a lesser included offense of criminal mischief, as a Class B misdemeanor.

Thus, we turn to the ordinary definition of deception for purposes of the criminal mischief statute. See State v. Prater, 922 N.E.2d 746, 748 (Ind. Ct. App. 2010), trans.

16

denied.  "Deception" is ordinarily defined as "the act of deceiving, cheating, hoodwinking, misleading, or deluding."  Webster's 3d New Int'l Dictionary 585 (2002).  The designated evidence most favorable to T&C satisfies this definition, and Koger's argument to the contrary fails as a matter of law.

Likewise, Koger's argument that T&C has failed to demonstrate a pecuniary loss as a result of Koger's deception must fail.  Koger asserts that T&C "cannot show any harm because the trial court has already determined that there will be a trial on whether T&C is entitled to a return of any portion of the paid rent . . . .  Thus, T&C will be fully compensated for any money it overpaid . . . ."  Appellant's Br. at 14.  But Koger does not explain why T&C's ability to demonstrate a financial loss supporting other theories of relief obviates T&C's claim for criminal mischief.  Koger has waived this argument.  App. R. 46(A)(8)(a).

We affirm the trial court's February 14, 2013, Order on summary judgment.

### Issue Three:  Whether the Trial Court's Order on T&C's Rule 56(D) Motion is Properly Before this Court

On cross-appeal, T&C asserts that the trial court erred when it denied its Rule 56(D) Motion.  In that motion, T&C requested the trial court to enter certain findings based on Koger's failure to dispute T&C's allegations in support of T&C's original motion for summary judgment, on which the court entered the October 23, 2012, Order on summary judgment.

We agree with Koger that this issue is not properly before this court in this interlocutory appeal.  The trial court certified, and we accepted, its February 14, 2013, Order for interlocutory appeal.  The trial court did not certify, and we have not accepted,

17

either its October 23, 2012, Order or its order on T&C's Rule 56(D) Motion.  See, e.g., State v. Keller, 845 N.E.2d 154, 160 (Ind. Ct. App. 2006) (noting that, "[h]ad the trial court issued separate orders, one for each of [the defendant's] motions to suppress, the question of whether it properly denied suppression [pursuant to one particular motion] would not be before us without certification"), trans. denied.  And we agree with Koger that T&C mischaracterizes its Rule 56(D) Motion when T&C suggests that this motion related to Koger's motion for partial summary judgment rather than T&C's earlier motion.  At no point did T&C request the trial court's February 14, 2013, Order be entered pursuant to Trial Rule 56(D).  Accordingly, we will not review this issue.  We affirm the trial court's judgment on the February 14, 2013, Order in all respects.

Affirmed.

BAKER, J., and CRONE, J., concur.