**Ralph L. WILSON, Jr., Appellant–Respondent,**

v.

**Linda C. WILSON, Appellee–Petitioner.**

No. 88A01–9912–CV–410.

Court of Appeals of Indiana.

July 27, 2000.

Maryland L. Austin, Corydon, Indiana, Attorney for Appellants.

Larry W. Medlock, Allen; Allen & Allen, Salem, Indiana, Attorney for Appellee.

## OPINION

ROBB, Judge

Ralph Wilson ("Husband") appeals from the trial court's division of property in a dissolution action filed by Linda Wilson ("Wife"). We affirm.

### Issues

Husband raises five issues for our review, which we consolidate and restate as follows:

1. Whether the trial court properly ordered the parties' marriage dissolved on September 30, 1994, but did not divide the marital property until March 18, 1999;

2. Whether the trial court selected proper valuation dates for the parties' property;

3. Whether the trial court properly valued and divided the marital assets, specifically the parties' marital residence and Husband's pension; and

4. Whether the trial court properly valued and divided the marital debts.

### Facts and Procedural History

Husband and Wife were married on March 11, 1978. At that time, Husband had been working for Ford for approximately twelve years. He continued to work at Ford throughout the marriage. Wife was a housewife and stay-at-home mother to the parties' daughter. She worked sporadically throughout the marriage, never earning more than $10,000 in any one year.

Wife filed a petition for dissolution of marriage on June 24, 1994. At the final hearing on September 29, 1994, Husband indicated his desire to reconcile, and Wife acknowledged that further discovery and evaluation of assets was necessary before the marital property could be divided; however, Wife requested that the marriage nonetheless be dissolved on that date. The trial court entered an order dissolving the marriage on September 30, 1994, and

setting a hearing for all remaining issues for November 16, 1994.

On November 9, 1994, Wife filed a motion to continue the final hearing indefinitely, which was granted. From January 1995 to September 1995, and again from November 1996 to April 1998, the parties reconciled and cohabitated in the marital residence. The trial court did not reset the final hearing, nor did either of the parties request it to be reset, until Wife filed a motion for final hearing on November 5, 1998. The final hearing was held on February 18, 1999, and the trial court entered a supplemental decree of dissolution dividing the marital estate. Husband now appeals. Additional facts will be provided as necessary.

### Discussion and Decision

### I. Standard of Review

We apply a strict standard of review to a dissolution court's distribution of property. *Wallace v. Wallace,* 714 N.E.2d 774, 781 (Ind.Ct.App.1999), *trans. denied.* The party challenging the property division must overcome a strong presumption that the court complied with the statute and considered the evidence on each of the statutory factors. *Id.* The presumption that a dissolution court correctly followed the law and made all the proper considerations in crafting its property distribution is one of the strongest presumptions applicable to our consideration on appeal. *Id.*

We will reverse a property distribution only if there is no rational basis for the award; that is, if the result reached is clearly against the logic and effect of the facts and circumstances before the court, including the reasonable inferences to be drawn therefrom. *Id.* at 781–82. In so determining, we cannot reweigh the evidence, and consider only the evidence favorable to the dissolution court's decision. *Cowden v. Cowden,* 661 N.E.2d 894, 895 (Ind.Ct.App.1996). We will also reverse where the trial court has misinterpreted the law or has disregarded evidence of statutory factors. *Wallace,* 714 N.E.2d at 782. However, that the same circumstances may have justified a different property distribution will not permit us to substitute our judgment for that of the divorce court. *Id.*

### II. Timeliness of Property Division

Husband first contends that the trial court erred in failing to divide the marital property at the time it granted the dissolution or within a reasonable time thereafter. He argues that the trial court's indefinite continuance of the final hearing for property division purposes delegated to Wife the power to decide when the property division would take place, and that the trial court abused its discretion in allowing the property matters to remain pending for over four years.

Notwithstanding his contention that the trial court erred in failing to enter a property division at the time it dissolved the parties' marriage, Husband acknowledges that the dissolution statute does not require all issues, including property division, to be settled in a decree dissolving the marriage. *See* Ind.Code § 31–15–7–4 (formerly Ind.Code § 31–1–11.5–8(e)) (allowing the trial court to bifurcate the issues to provide for summary disposition of uncontested issues and a final hearing of contested issues and requiring the summary disposition order to include a date for the final hearing of contested issues). The trial court set the property issues for a final hearing at the time it entered the decree of dissolution, as required by statute. Thus, it was not error for the trial court to summarily dissolve the parties' marriage and retain jurisdiction for the purpose of a future property division.

In support of his contention that the trial court erroneously delegated to Wife the power to decide when to effect the property division, Husband cites several cases which are distinguishable from the case at bar. It is true that we have said that, because the dissolution statute states

that the court shall divide the marital property, "it is reversible error to delegate to one of the parties the power to decide when, if ever, to divide the property." *Henderson v. Henderson*, 401 N.E.2d 73, 74 (Ind.Ct.App.1980). In *Henderson*, the trial court awarded the marital real estate to the wife, created a lien of $5,500 on the real estate in favor of the husband "to be retired or paid to [the husband] at such time as [the wife] decides to sell said real estate" and to further award up to $4,000 to the husband upon a split of the equity of the real estate when the wife sells. 401 N.E.2d at 73. Thus, the amount the husband was entitled to receive from this provision, as well as the time at which he would receive it, if ever, was totally dependent upon the wife's decision to sell the property. This, the court determined to be an improper delegation of the trial court's obligation to divide the. marital property. This is not the situation we have here. Here, no disposition of the marital property had yet been made, and neither party had exclusive control over the division, as in *Henderson*. Thus, there was no delegation of the trial court's obligation.

■ Finally, with respect to Husband's contention that the trial court erred in allowing the property issues to remain pending for over four years, we merely note that, at any time, either party could have moved the court to set the remaining issues for a final hearing. If Husband wanted the property divided earlier, he need only have filed a motion seeking a hearing. However, he did not do so, and he cannot now be heard to complain. *See Trout v. Trout*, 638 N.E.2d 1306, 1307–08 (Ind.Ct.App.1994), *trans. denied* (holding, in the context of a challenge to summarized testimony in divorce proceedings, that "any challenges to the procedure utilized by the trial court were waived by Husband's failure to object to the format of the proceedings.... Husband, through his silence, is held to have assented to proceeding in this irregular manner.").

## III. Valuation Dates

Husband also contends that the trial court erred in choosing different dates to value different elements of the marital property. Part of the marital property, including Husband's pension and 1971 Ford truck, was valued as of September 29, 1994, the date of the dissolution. Part of the marital property, including certain credit card debt, was valued as of December 31, 1996. The remainder, including the marital residence and 1991 Mercury, was valued as of February 19, 1999, the date of the final hearing on the property division.

■ A trial court has broad discretion in determining the date upon which to value marital assets. *Hiser v. Hiser*, 692 N.E.2d 925, 927 (Ind.Ct.App.1998). For purposes of choosing a date upon which to value marital assets, the trial court may select any date between the date of filing the petition for dissolution and the date of the final hearing. *Id.* at 928. There is no requirement in our law that the valuation date be the same for every asset. Thus, to the extent Husband argues that the trial court's valuation was erroneous because the court selected different dates on which to value different assets, we see no error.

## IV. Valuation and Division of Marital Assets

### A. Marital Residence

■ Husband contends that the trial court erred in electing to value the marital residence as of February 19, 1999, the date of the final hearing for purposes of property division. On or about the date of the dissolution, the marital residence was valued at approximately $80,000. By the time of the property division hearing, the residence was valued at approximately $110,000. The trial court's order with respect to the marital residence is as follows:

The Court finds that [Husband] should be awarded the marital residence. The Court finds that the house

should be valued at $110,000.00 and orders that [Wife] be awarded one-half of the equity in the house as of this date, but awarding [Husband] first all contributions toward the principal balance which he has made since September 30, 1994.

R. 24.

We agree with Husband that the marital pot closes on the date the petition for dissolution is filed. Indiana Code section 31–15–7–4 states that:

In an action for dissolution of marriage under IC 31–15–2–2, the court shall divide the property of the parties, whether:

(1) owned by either spouse before the marriage;

(2) acquired by either spouse in his or her own right:

 (A) after the marriage; and

 (B) *before final separation of the parties;* or

(3) acquired by their joint efforts.

Ind.Code § 31–15–7–4(a) (formerly Ind. Code § 31–1–11.5–11(b)) (emphasis added). The "final separation of the parties" has been defined to mean "the date of filing of the petition for dissolution of marriage." Ind.Code § 31–9–2–46 (formerly Ind.Code § 31–1–11.5–11(a)). *See also Harris v. Harris,* 690 N.E.2d 742, 745 (Ind.Ct.App. 1998). However, the date of final separation only establishes what property is to be included in the marital pot, not necessarily the value of that property. As previously stated, the trial court has discretion when valuing the marital assets to set any date between the date of filing the dissolution petition (the final separation date) and the date of the hearing. *Quillen v. Quillen,* 671 N.E.2d 98, 102 (Ind.1996). Thus, the trial court did not necessarily err in choosing to value some of the parties' property as of a date after the filing of the dissolution petition.

Husband argues that "[t]o include in the marital pot the increase in value of … real estate which is accrued due to the passage of time after a dissolution is final is to include property acquired after the final separation date." Brief of the Appellant at 8. We acknowledge the unique circumstances in which this case comes to us: the parties were actually divorced and had been restored to the status of unmarried persons on the date the trial court chose for valuation of the marital residence. Nonetheless, the marital residence is a marital asset rightly included in the marital pot. During significant portions of the four years between the dissolution and the property division hearing, the parties lived together in the marital residence in a marital relationship, the mortgage payments were made out of a joint checking account to which both parties contributed, albeit unequally, and both parties contributed to the upkeep and running of the household.

Above all, the trial court is charged with dividing the marital property in a "just and reasonable manner." Ind.Code § 31–15–7–4(b) (formerly Ind.Code § 31–1–11.5–11). In *Chestnut v. Chestnut,* 499 N.E.2d 783 (Ind.Ct.App.1986), husband and wife cohabitated for approximately four years prior to their marriage. The trial court considered the actions of the parties during that four year period of cohabitation in distributing the marital assets, and we held that "[i]t was within the trial court's discretion to consider this evidence when distributing marital assets under principles of equity." *Id.* at 787.

We recognize the factual dissimilarities between *Chestnut* and this case, namely that in *Chestnut,* the period of non-marital cohabitation preceded the marriage, whereas here, the period of non-marital cohabitation followed the dissolution of the marriage. However, we believe the principle behind *Chestnut* still applies: the trial court has discretion to consider the totality of the circumstances when dividing the marital property. We have held that "it is possible for a court to abuse its discretion in picking a [valuation] date which unjustly fails to account for a significant increase in the value of an asset during the proceed-

ings." *Knotts v. Knotts*, 693 N.E.2d 962, 969 (Ind.Ct.App.1998), *trans. denied.* Here, the trial court valued the property as of the later date, and therefore, at the greater value, but also reduced the equity to be split between the parties by the amounts Husband had paid toward the principal balance. We do not believe that the trial court abused its discretion in valuing and dividing the marital residence in such a way that acknowledges the relationship of the parties in the four years between the dissolution of their marriage and the division of their property.

### B. Husband's Pension

 Husband also contends that the trial erred in valuing his Ford pension. Husband began working for Ford in 1966, and the parties were married in 1978. The trial court found that there is "no reason to deviate from the presumption of an equal division and award[ed] . . . Wife 50% of the value of the pension as of September 30, 1994. . . ." R. 23–24. Husband concedes that his pension was rightly included in the marital pot for division, but contends that the trial court erred in not considering "the years [Husband] worked prior to the marriage in accruing pension benefits by his sole efforts. . . ." Brief of the Appellant at 15.

Indiana Code section 31–15–7–5 states that:

> The court shall presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:
>
> (1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.
>
> (2) The extent to which the property was acquired by each spouse:
>
> (A) before the marriage. . . .

Ind.Code § 31–15–7–5(1), (2) (formerly Ind.Code § 31–1–11.5–11). Husband relies upon this section in support of his argument that the trial court should not have divided his pension equally between the parties, but should have considered the extent of his premarital employment.

If Husband wished to have the extent of his premarital-employment contribution to his pension considered by the trial court as potentially rebutting the presumption of an equal division of marital property, he should have introduced some evidence during the hearing of the value of the pension at the time of the marriage or argued that a ratio of marital versus non-marital value be established. However, he did not do this, and thus, Husband has failed to present "relevant evidence" which would allow the trial court to justify an unequal division. We see no abuse of discretion in the trial court's equal division of the pension under these circumstances.

### V. Valuation and Division of Marital Debts

 Finally, Husband contends that the trial court erred in its valuation and division of the marital debts, specifically, the parties' credit card debts. The trial court found that "each party shall be responsible for one-half of the credit card debt that existed on December 31, 1996." R. 24. The court further found that "the debts . . . Husband has paid since separation, represent a gift from him to [Wife]. . . ." *Id.* Husband contends that there was no evidence of a "gift" and that the trial court's division of marital debts effected an unequal division of marital property contrary to the trial court's stated intention to divide the property equally.

The trial court divided the debts of the parties equally as of December 31, 1996. The fact that Husband continued to pay these debts even after the parties' marriage was dissolved by decree dated September 30, 1994, and did not seek court intervention in determining his obligation to do so, was rightly considered by the trial court in its determination that any

amounts paid after the date set by the court were, in fact, gifts to Wife. We do not believe that the trial court abused its discretion in so determining.

### Conclusion

The trial court did not err in not dividing the marital property at the same time it granted a dissolution of marriage to the parties. Moreover, the trial court did not abuse its discretion in valuing and dividing the property. Accordingly, the trial court's judgment is affirmed.

Affirmed.

SHARPNACK, C.J., and BAILEY, J., concur.