# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**HEATHER GEORGE MYERS**
**DONNA JAMESON**
Greenwood, Indiana

ATTORNEY FOR APPELLEE:

**JEANNE M. HAMILTON**
Doninger Tuohy & Bailey LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN LUTTRELL, | ) | |
| | ) | |
| Appellant-Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1301-DR-85 |
| | ) | |
| MELINDA LUTTRELL, | ) | |
| | ) | |
| Appellee-Respondent. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable David Dreyer, Judge
The Honorable Patrick Murphy, Commissioner
Cause No. 49D01-0911-DR-52404

**September 12, 2013**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

Case Summary and Issues

John Luttrell appeals the trial court's awards and division of property following his divorce from Melinda Luttrell. John presents three restated issues on appeal: 1) whether the trial court properly divided the marital estate; 2) whether the trial court abused its discretion in awarding spousal maintenance to Melinda; and 3) whether the trial court abused its discretion in its award of attorney's fees. Concluding that the trial court abused its discretion only in regards to consideration of the Luttrell's children's student loans, we affirm in part and remand in part.

Facts and Procedural History

John and Melinda were married in April 1987. They have three children, who were all adults at the time of the final hearing in this case. John was employed with the United States Postal Service throughout the marriage, while Melinda worked less than full-time for much of the marriage and was the primary caretaker for the children.

In August 2008, Melinda filed for social security disability insurance ("SSDI"). In November 2009, Melinda filed a petition for legal separation from John. Soon thereafter, John filed a counter-petition for dissolution of marriage, and the court converted the separation proceedings to divorce proceedings. In April 2010, an Administrative Law Judge ("ALJ") found Melinda to have been disabled under the Social Security Act since January 15, 2008. The ALJ found that Melinda had the following severe impairments: cervical spondylosis, chronic pyelonephritis, anemia, spasmodic dysphonia, osteoporosis, and disorder of the back. Melinda was awarded a lump sum payment of $14,430.75 in social

security disability benefits, representing lost income from January 15, 2008 to April 23, 2010, and she began receiving monthly SSDI payments in the amount of $915.

In September 2012, the trial court held a final hearing on the divorce proceedings. John and Melinda's incomes for the years immediately preceding the final hearing were as follows:

|  | John | Melinda |
|---|---|---|
| **2007** | Gross income of $71,685 | Gross income of $33,125 |
| **2008** | Gross income of $51,899 | Gross income of $14,960 |
| **2009** | Gross income of $53,333 | Gross income of $4,080 Unemployment benefits of $16,308 (Total = $20,388) |
| **2010** | Gross income of $53,998 | Gross income of $1,728 Disability payments of $6,174 SSDI lump sum payment of $14,430 (Total = $22,333) |
| **2011** | Gross income of $52,829 | Gross income of $6,743 Disability payments of $10,584 (Total = $17,327) |

In December 2012, the court entered a decree of dissolution, including findings of fact and conclusions of law. The court's relevant conclusions included that the lump sum SSDI payment to Melinda was not an asset of the marriage subject to division; that two student loans, taken out in the names of their children, and for which John and Melinda co-signed, were not debts of the marriage subject to division;[1] that the presumption of equal division of property had been rebutted and the marital estate would be split 60/40 in favor of Melinda;

---

[1] Their son Shane has a student loan in the amount of $14,137 which was in deferral at the time of the final hearing, and for which both John and Melinda co-signed to guarantee payment in the case of a default. Their daughter Danisha has a student loan in the amount of $31,837 which was in forbearance at the time of the final hearing and for which John alone co-signed to guarantee payment in the case of a default.

that maintenance was proper because Melinda's ability to support herself had been materially affected, and John was therefore ordered to pay her $230 each month, and additionally pay a monthly premium of $542 to maintain Melinda on health insurance benefits through the United States Postal Service; and that, due to disparity of income, John was to pay $15,000 of Melinda's attorney's fees.[2]  This appeal followed.  Additional facts will be supplied as necessary.

## Discussion and Decision

### I.  Division of Marital Estate

#### A.  Standard of Review

Indiana Code sections 31-15-7-4 and 31-15-7-5 govern disposition of marital assets in a dissolution proceeding.  There is a presumption of an equal division of property, but that presumption may be rebutted.  Ind. Code § 31-15-7-5.  We apply a strict standard of review to a dissolution court's distribution of property.  Wilson v. Wilson, 732 N.E.2d 841, 844 (Ind. Ct. App. 2000), trans. denied.  The party challenging the property division must overcome a strong presumption that the court complied with the statute and considered the evidence on each of the statutory factors.  Id.  We will reverse a property distribution only if there is no rational basis for the award—that is, if the result reached is clearly against the logic and effect of the facts and circumstances before the court, including the reasonable inferences to be drawn therefrom.  Id.  We do not reweigh the evidence, and we consider only the evidence

---

[2]  John had incurred a total of $8,837 in attorney's fees, and Melinda had accumulated $32,198 in attorney's fees.

4

favorable to the dissolution court's decision. Id. We will also reverse where the trial court has misinterpreted the law or has disregarded evidence of statutory factors. Id.

## B. Exclusion of Melinda's Lump Sum SSDI Payment

John first argues that the trial court improperly excluded Melinda's lump sum SSDI payment from the marital pot. The trial court relied on Severs v. Severs, 837 N.E.2d 498 (Ind. 2005), in its determination that the lump sum payment was not a divisible marital asset. John is correct that the lump sum payment covered a period of time during the Luttrells' marriage, and that Severs specifically addressed SSDI payments as a future income stream rather than examining a retroactive lump sum payment as is at issue here. John does not argue that he is entitled to any of Melinda's future SSDI payments. Rather, John urges us to consider the lump sum payment here as more closely resembling worker's compensation benefits, which our supreme court determined to be divisible marital assets to the extent that a payment was intended to replace earnings during the marriage. Leisure v. Leisure, 605 N.E.2d 755, 759 (Ind. 1993). Were state law the only relevant basis for a determination of the issue at hand, we might be inclined to agree with John. However, Severs points to applicable federal law regarding social security benefits that supports the conclusion of the trial court.

The Social Security Act specifies that:

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

5

42 U.S.C. § 407(a). Based on the plain wording of the statute, with references to "moneys paid" and "[any] other legal process," it appears that it applies to the money that was paid to Melinda, and prevents that payment from being subject to division in the divorce proceedings. A limited number of Indiana cases reference section 407, and none address the precise issue at hand, although Severs comes closest. However, an evaluation of other case law, as well as the Social Security Act itself, further illuminates the applicability of section 407 to Melinda's lump sum payment. The Act itself includes an exception to the broad prohibition contained in section 407. Section 659 provides that

> Notwithstanding any other provision of law (including section 407 of this title and section 5301 of Title 38) . . . moneys . . . due from, or payable by, the United States . . . to any individual . . . shall be subject . . . to withholding in accordance with State law . . . and to any other legal process brought, by a State agency administering a program under a State plan approved under this part or by an individual obligee, to enforce the legal obligation of the individual to provide child support or alimony.

42 U.S.C. § 659(a). That same section also defines "alimony," and specifically excludes from the definition "any payment or transfer of property or its value by an individual to the spouse or a former spouse of the individual in compliance with any community property settlement, equitable distribution of property, or other division of property between spouses or former spouses." 42 U.S.C. § 659(i)(3)(B) (emphasis added).

It is clear then that Congress knows how to provide an exception to the broad limits imposed by section 407, and moreover that Congress was mindful of the potential for division of benefits to come up in divorce proceedings and yet chose not to extend the exception to allow for divisibility of either past or future benefits except in the case of child

6

support or alimony.  See, e.g., Gomez-Perez v. Potter, 553 U.S. 474, 497 (2008) ("We reasoned that 'Congress accordingly demonstrated that it knew how to provide a statutory right to a jury trial when it wished to do so elsewhere in the very 'legislation cited.' . . . But in [§ 633a(c)] it failed explicitly to do so.'") (citation omitted); McNary v. Haitian Refugee Ctr., Inc., 498 U.S. 479, 496 (1991) ("It is presumable that Congress legislates with knowledge of our basic rules of statutory construction . . . ."). Our reading of the Act is further supported by the United States Supreme Court's decision in Philpott v. Essex County Welfare Board, in which the Court held that section 407 barred a New Jersey welfare agency from recovering disability benefits retroactively paid to the recipient in a lump sum, even though state benefits would have been reduced had the recipient received SSDI in monthly payments rather than a lump sum, and even though the recipient had executed an agreement to reimburse the state for welfare received.  409 U.S. 413 (1973).[3]

Consequently, it appears that the restrictions found in section 407 apply to the lump sum payment that Melinda received.  We therefore agree with Melinda that the broad statement by our supreme court that "any assignment or division of social security benefits to satisfy a marital property settlement under Indiana law is barred by 42 U.S.C. § 407," is not limited to a future income stream as at issue in that case, but also applies to the lump sum

---

[3] Congress later overrode Philpott by enacting legislation that authorized localities to recover interim assistance provided to SSI applicants once the applicant received retroactive benefits. See Rodriguez v. Perales, 86 N.Y.2d 361, 365 (1995).  That amendment, however, applies only to local governments recovering interim assistance, not to divisibility of payments in the context of divorce proceedings.

7

payment that Melinda received.[4]  Severs, 837 N.E.2d at 501.  The trial court thus properly excluded the payment from the pot of divisible property.  This is so even though the payment was retroactive, even though a large portion of it covered a period of time during the marriage, and even though the money would have been available for both John and Melinda's use had it been received as payments beginning in 2008—when her disability began and when they were living as a married couple—rather than as a lump sum payment following their separation.

## C.  Exclusion of the Children's Student Loans

The trial court concluded that the children's student loans were not debts of the marriage subject to division.  John argues that the loans, on which John and/or Melinda co-signed, should have been considered by the trial court.  We agree.  While there is little relevant Indiana case law regarding disposition of contingent liability in divorce proceedings, we believe the loans should have been considered by the trial court.

We have previously noted that

> in a dissolution proceeding, the trial court is mandated, by statute and case law, to divide the assets and liabilities of the parties to the proceeding in which they have a vested present interest.  Of course, the trial court may not divide assets which do not exist just as it may not divide liabilities which do not exist.

In re Marriage of Lay, 512 N.E.2d 1120, 1123-24 (Ind. Ct. App. 1987).  However, we do not believe that it is fair to say that the Luttrells' liability for the student loans that they co-signed "does not exist."  While the children have not defaulted on either loan and so neither John

---

[4] Some courts have held that, while SSDI payments may not be divided in divorce proceedings, they may be considered as part of the total picture as a court decides how to equitably divide up those items that are

8

nor Melinda has been called to pay on the loans, the question is only who will pay the loan, not whether John and Melinda might be liable. In essence, we believe that the Luttrells' liability for the loans has "vested" for our purposes here, and thus the loans need to be considered by the trial court. See Leever v. Leever, 919 N.E.2d 118, 124 (Ind. Ct. App. 2009) (stating that "the term 'vest' generally means either vesting in possession or vesting in interest. Vesting in possession connotes an immediate existing right of present enjoyment, while vesting in interest implies a presently fixed right to future enjoyment," and holding that an interest had vested in real estate under a constructive trust where the parties would receive a right to enjoy the property as they see fit once the trust no longer had a reason to exist—i.e. when one party's parents no longer needed use of the residence in question) (citation omitted). While it is possible that neither John nor Melinda will be called upon to make good on their promise to repay the loans, at the same time, their names cannot be removed from the loans. If one of the children defaults, the co-signers will be liable on the debt. We remand to the trial court for consideration of the Luttrells' liability under the children's student loans.

### D. Division of the Estate

John also argues that the trial court improperly divided the marital estate by failing to properly account for the value of a vehicle and by assigning the full value of the Luttrells' 2008 and 2009 tax liability and any debt to an apartment complex solely to John. We disagree. John is correct that the trial court references an "Exhibit A" which is not included with the order. John suspects that the court meant to include as Exhibit A one of Melinda's

divisible. See, e.g., Stanley v. Stanley, 956 A.2d 1, 4 (Del. 2008). We do not reach that question here.

exhibits, which listed the value and amount owed on the car that Melinda was driving at the time. While it would have been preferable for the court to include any referenced exhibits, we consider the court's disposition of marital property as a whole, not item by item. Krasowski v. Krasowski, 691 N.E.2d 469, 473 (Ind. Ct. App. 1998). The court referenced all major items in the marital pot within its order—noting, among other things, that John would keep his vested retirement plan; John would pay certain loans; Melinda was entitled to a set-off for a savings plan; Melinda would keep the car she was driving and John would pay the loan for the car; and the parties would keep the personal property currently in their own possession. The court also clearly referenced statutory factors in its order, and justified its unequal division of property. This also applies to the court's decision to put the responsibility for any tax liability on John, as well as any debt owed by the apartment complex (although no such debt was owed or claimed by the complex at the time of the hearing). On the whole, there is a rational basis for the court's distribution of property, and John has not overcome the presumption that the court complied with the statute and considered the evidence on the statutory factors.

## II. Spousal Maintenance

### A. Standard of Review

The trial court may award spousal maintenance upon the finding that a spouse is incapacitated and her ability to support herself is materially affected. Ind. Code § 31-15-7-2. The trial court's power to award maintenance is wholly within its discretion, and we will reverse only when the decision is clearly against the logic and effect of the facts and

10

circumstances of the case. <u>Bizik v. Bizik</u>, 753 N.E.2d 762, 768-69 (Ind. Ct. App. 2001), <u>trans. denied</u>. In determining whether a trial court has abused its discretion in a spousal maintenance determination, we will presume that the trial court properly considered the applicable statutory factors in reaching its decision. <u>Id.</u> at 769. The presumption that the trial court correctly applied the law in making an award of spousal maintenance is one of the strongest presumptions applicable to the consideration of a case on appeal. <u>Id.</u>

### B. Maintenance Awarded to Melinda

Here, the trial court found that Melinda was incapacitated and that her ability to support herself is materially affected. The trial court awarded her spousal maintenance in the amount of $230 per month, in addition to John paying the monthly premium for her to stay on the postal service insurance. John argues that the statutory criteria were not met, apparently because Melinda works part time and because she did not have a medical expert testify as to her prognosis or limitations.[5] Melinda testified as to her medical issues, her difficulty working, and her difficulty maintaining employment due to her many medical appointments and treatments. The Social Security Administration has found Melinda to be disabled. We do not agree that the trial court abused its discretion in awarding maintenance to Melinda. As for the part of the order requiring John to pay Melinda's insurance premium through the postal service, he argues that she is eligible for Medicare parts A through D but only

---

[5] John also points to the fact that Melinda's income for 2011 was "almost twice the poverty threshold" of $11,702 to support his claim that her ability to support herself is not materially affected. Appellant's Brief at 14. To the contrary, we think this speaks more to how absurdly low the "poverty" threshold is set than it does to Melinda's ability to support herself. Despite her income being nearly double the poverty threshold, Melinda testified that she qualifies for and receives food stamps and that qualifying for food stamps has allowed her to gain several pounds, as she had been living on $50 per week for food—which equates to less

participates in part A, and that she could participate in parts B through D for a nominal fee. The trial court noted in its order that there was testimony suggesting that Melinda could participate in Medicare for a nominal fee, but that there was no evidence submitted by either party as to the actual cost. Further, Melinda testified that she had extensively researched her coverage options, and that Medicare would not cover many of her necessary appointments and treatments. The court found that Melinda needed health insurance to help cover the costs of treatments that are necessary for her disabilities and medical issues. The trial court's award is not clearly against the logic and effect of the facts and circumstances of the case.

## III. Attorney's Fees

### A. Standard of Review

In dissolution proceedings, the trial court may order a party to pay a reasonable amount for the other's attorney's fees. Ind. Code § 31-15-10-1. The trial court has broad discretion in awarding attorney's fees, and we will reverse an award only where the decision is clearly against the logic and effect of the facts and circumstances. In re Marriage of Bartley, 712 N.E.2d 537, 546 (Ind. Ct. App. 1999). In assessing attorney's fees, the court may consider such factors as the resources of the parties, the relative earning ability of the parties, and other factors which bear on the reasonableness of the award. Id. An award of attorney's fees is proper when one party is in a superior position to pay fees over the other party. Id.

than $2.50 per meal.

12

B. Attorney's Fees Awarded to Melinda

John argues that the court abused its discretion in awarding attorney fees to Melinda because she received the lump sum payment of SSDI benefits, and "had [she] been more financially responsible with her expenditures, she would have been able to contribute more" to her attorney's fees. Appellant's Br. at 18. John also argues that because Melinda received money in marital assets, she had the resources to pay her own attorney's fees. The trial court seems to have especially considered the disparity in income between John and Melinda in awarding attorney's fees, and Melinda notes that the award works out to John paying approximately 60% of the total attorney bills, in line with the court's 60/40 division of marital property. We disagree that the award was unreasonable or that the trial court abused its discretion in awarding the fees.

## Conclusion

Concluding that the trial court properly excluded Melinda's lump sum SSDI payment, improperly excluded from consideration the Luttrells' liability on their children's student loans, otherwise properly divided the estate, and properly awarded maintenance and attorney's fees, we affirm in part and remand for proceedings consistent with this opinion.

Affirmed in part and remanded.

RILEY, J., and KIRSCH, J., concur.

13