FILED

Dec 19 2023, 8:47 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEYS FOR APPELLANT

Alexander N. Moseley
Matthew C. McConnell
Dixon & Moseley, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Zachary J. Stock
Carmel, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Gerard M. Dierckman,<br>*Appellant-Respondent,*<br><br>v.<br><br>Sandra E. Dierckman,<br>*Appellee-Petitioner.* | December 19, 2023<br><br>Court of Appeals Case No.<br>22A-DN-2801<br><br>Appeal from the Decatur Circuit<br>Court<br><br>The Honorable James D.<br>Humphrey, Special Judge<br><br>Trial Court Cause Nos.<br>15C01-2103-CB-13<br>16C01-1912-DN-758 |

**Opinion by Judge Bailey**
Judges May and Felix concur.

**Bailey, Judge.**

# Case Summary

[1] The marriage of Gerard Dierckman ("Husband") and Sandra Dierckman ("Wife") was dissolved by a Decree of Dissolution and Judgment dated October 26, 2022. Husband appeals the final dissolution order as it relates to the marital property.

[2] We affirm.

# Issues

[3] Husband raises five issues which we consolidate and restate as the following four issues:

> I.    Whether the trial court's findings are clearly erroneous.
>
> II.   Whether the trial court erred in the valuation dates it chose for the marital assets, i.e., real estate, farm income, farm inventory, and accounts receivable.
>
> III.  Whether the trial court erred in valuing the marital debt as of the date of the petition for dissolution.
>
> IV.   Whether the trial court erroneously reduced Wife's equalization payment by the amount Wife paid Husband for his personal expenses incurred during the dissolution proceedings.

# Facts and Procedural History

[4] Husband and Wife were married in 1987. They have four grown sons born of the marriage. Over the course of the marriage, Husband and Wife acquired farmland in Rush and Decatur Counties. Title to some of the land was acquired through litigation with Husband's family, and some of the land was purchased. All the land was held jointly by Husband and Wife as a sole proprietorship.

[5] Husband, Wife, their four sons, and, periodically, farm employees operated the parties' farm year-round. The parties' sons worked on the farm throughout their childhoods, and Wife was "the primary bookkeeper" who "pa[id] the bills, … t[ook] care of the financing, … secure[d] the operating l[oans]," and obtained contracts for crop sales and deliveries. Tr. v. II at 68. Wife also hauled grain during harvest season, "ran the grain elevator," Tr. v. II at 223, and "ran the planter," Tr. v. III at 113.

[6] When the sons grew into adults and stopped helping on the farm, Husband and Wife began to experience difficulty running the farm. The sons became estranged from Husband due to the "rude, mean, aggressive, sporadic, erratic, crazy manner [with which] he handled himself with the boys, with grain buyers, [and] with machinery dealers." Tr. v. II at 222. Husband and Wife became "more financially strapped" and had difficulty securing financing. *Id*. at 61. In March 2018, the parties secured a two-year line of credit from Citizen's Union Bank just in time to buy that year's farming inputs.

[7] In October 2018, Husband was arrested and charged with strangulation and domestic battery of Wife. Following a jury trial, Husband was found guilty of strangulation, pled guilty to the domestic battery charge, and was sentenced to a year in jail. At the time of Husband's arrest, there were still crops in the fields, and the parties' sons helped Wife harvest the remaining crops. Following Husband's release from jail, he was initially excluded from the farm pursuant to a no-contact order. That order was later modified to allow Husband to access only the farm but not the residence located on the farm.

[8] The parties' attempts to reconcile failed, and in December 2019, Wife filed her Petition for Dissolution of Marriage. The parties' sons, along with their wives, continued to help Wife with operating the farm, and Wife also helped the sons with their own farms. In retaliation for Wife's refusal to "drop the divorce," Husband refused to provide his necessary participation to extend the Citizen's Union Bank operating line of credit for the farm for the year 2020. Tr. v. II at 73. Therefore, the line of credit was not extended, but farm mortgage payments were still due.

[9] The trial court held a provisional hearing on February 27, 2020, at which both parties testified. Wife testified that she had obtained an agreement with Agri Business Finance ("ABF") for a new operating loan, provided that she gave them proof of a provisional order allowing her exclusive use and possession of the farm operations pending a final dissolution order. Addam Carmony, a loan officer with ABF, also testified and affirmed that ABF would provide an operating loan to Wife if she obtained a provisional order giving her exclusive

use and possession of the farm. Carmony did not "want to work with [Husband] at that time." Tr. v. IV at 36. Husband testified that he agreed to Wife having provisional exclusive rights to the farm so that the farm did not "go broke or have to file bankruptcy." Provisional Hearing Tr. at 34-35.[1]

[10] On March 4, 2020, the trial court entered a provisional order granting Wife exclusive use, possession, and control of the "marital real estate"—which included the farm and farming equipment—pending a final determination on dissolution. App. v. II at 43. Wife was also ordered to "timely pay the monthly mortgage, taxes[,] and insurance." *Id*. The provisional order also directed Wife to use any new operating loan "consistent with past practices which includes the payment of personal expenses … for both Husband and Wife." *Id*. Each party was also restrained from "selling, removing, encumbering, transferring, destroying, concealing, or otherwise interfering with the parties' assets" during pending proceedings. *Id*. However, the order stated that it did "not preclude Wife from continuing to operate the farm as outlined above." *Id*.

[11] Since March 2020, Wife has been solely legally responsible for the operation of the parties' 1,500-acre farm, including making all decisions, managing the farm finances, maintaining the ABF line of credit, and delivering grain. Wife has

---

[1] The transcript of the provisional hearing is not included in the record on appeal, but we accessed it via the trial court records contained in the Odyssey court case management system under Cause Number 16C01-1912-DN-758.

also maintained good working relationships with her sons, who assist her with the farm operations and anticipate continuing to do so. However, three of the parties' sons testified that the sons would not work with Husband if he were awarded the farming operations because they "can't get along" with him due to his verbal abuse. Tr. v. IV at 79.

[12] While the dissolution proceedings were pending, Wife used proceeds from the farming operation to pay down the parties' marital debts. As of October 2021, Wife had reduced the debts by $941,728.17, and by August 2022, Wife had increased the debt reduction to $1,260,563.04. During the dissolution proceedings, Wife also used farm proceeds to pay Husband $70,393.00 for his personal expenses.

[13] The final dissolution hearings took place over the course of seven days between October 2021 and August 2022. Both parties submitted certified appraisals of the marital real estate. Wife's appraisal valued the total real estate at $15,516,222.00 as of October 2020; Husband's appraisal valued the total real estate at $15,436,000.00 as of January 2021. The only income included in each parties' appraisal was $183,000 from the sale of part of the farmland. Neither party provided an updated appraisal or expert testimony regarding market appreciation of the real estate while the dissolution proceedings were pending.

[14] On October 26, 2022, the trial court issued its final order, which included specific findings. The trial court held that, per the Wife's agreement, the parties' marital estate would be divided evenly between them, even though

there was some evidence that might support an unequal distribution in Wife's favor. Because each party provided only one appraisal of the real estate, their respective appraisals were conducted within a four-month period of each other, and there was only a "negligible" difference between each party's appraisal, the trial court found it "just and reasonable to use the … average of the [two] appraised values as the total value of the real estate." Appealed Order at 4. Thus, the court entered a real estate value of $15,476.111.00.

[15] Wife submitted an appraisal of $1,380,220.00 as the value of the farm equipment as of December 3, 2020. Husband did not submit any appraisal of the farm equipment.[2] The court valued the marital debts, inventory, accounts receivable, and bank accounts as of the date the dissolution petition was filed, i.e., December 2019.

[16] After noting Husband's bad relationships with Wife, the parties' sons, and "lenders and vendors" and his poor behavior during the course of the dissolution proceedings, the trial court nevertheless stated that it "did not consider fault as a factor in dividing this marital estate." *Id*. at 6. Rather, because Wife provided some "evidence of her ability to refinance the secured debt and to make an equalization payment to Husband" but Husband did not do the same, the trial court found it "just and reasonable to award all real estate

---

[2] Regarding farm equipment, Husband only submitted a list of equipment with certain values attributed to each item. The source of the alleged values is not indicated, nor did Husband provide testimony regarding the source of those alleged values. *See* Ex. BB, Ex. v. IV at 43.

to Wife along with the corresponding secured debt, subject to an equalizing payment." *Id*. at 7. The court also awarded Wife the value of the farm equipment, inventory, accounts receivable, and bank accounts. The court ordered Wife to pay husband an equalization payment of "$4,974,222.45 less the personal expenses she paid on his behalf [of] $70,393.00, for a net judgment of $4,903,829.45." *Id*. at 10. Husband now appeals.

# Discussion and Decision

## Standard of Review

[17] Our Supreme Court has recently reiterated the standard of review of a trial court's division of a marital estate in a dissolution proceeding.

> An abuse-of-discretion standard of review applies to a trial court's … division of marital assets. A trial court abuses its discretion if its decision stands clearly against the logic and effect of the facts or reasonable inferences, if it misinterprets the law, or if it overlooks evidence of applicable statutory factors. When, like here, the trial court enters findings of fact and conclusions of law, an appellate court may set aside the trial court's judgment only when clearly erroneous. The party challenging the trial court's division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute.

*Roetter v. Roetter*, 182 N.E.3d 221, 225 (Ind. 2022) (quotations and citations omitted); *see also Crider v. Crider*, 26 N.E.3d 1045, 1048 (Ind. Ct. App. 2015) (noting "that presumption is one of the strongest presumptions applicable to our consideration on appeal").

[18] On appeal, we "may not reweigh the evidence or assess the credibility of witnesses, and we will consider only the evidence most favorable to the trial court's disposition of the marital property." *Bringle v. Bringle*, 150 N.E.3d 1060, 1073 (Ind. Ct. App. 2020), *trans. denied*. Moreover, "we will reverse a property distribution only if there is no rational basis for the award." *Smith v. Smith*, 854 N.E.2d 1, 6 (Ind. Ct. App. 2006). "Although the facts and reasonable inferences might allow for a different conclusion, [we] will not substitute [our] judgment for that of the trial court on appeal from distribution of marital property in dissolution proceedings." *Bringle*, 150 N.E.3d at 1073.

## Findings of Fact

[19] Husband challenges several of the trial court's specific findings, either as a matter of law or as lacking supporting evidence.

### Findings 15 and 16

[20] Husband maintains that findings 15 and 16 impermissibly consider fault as a fact relevant to the distribution of the marital estate. As Husband correctly notes, Indiana is a "no-fault divorce" state, and, as such, our "divorce statutes do 'not provide for factoring in any pre- or post-petition conduct of either party'" in the disposition of the marital property. *Cruz v. Cruz*, 186 N.E.3d 152, 155-56 (Ind. Ct. App. 2022) (quoting *Clark v. Clark*, 578 N.E.2d 747, 751 (Ind. Ct. App. 1991)). Thus, it is an abuse of discretion for a court to consider the "fault" of either party as a factor in the distribution of the marital estate. *See Clark*, 578 N.E.2d at 751.

However, here, the trial court did not impermissibly consider "fault"; in fact, the court specifically stated that it "did not consider fault as a factor in dividing this marital estate." Appealed Order at 6. Rather, the trial court discussed Husband's poor relationships with Wife, his sons, and the lenders and vendors as evidence that it was unlikely that Husband would be able to refinance the secured debt and make an equalization payment to Wife if the real estate were awarded to him. The fact that Husband's poor and erratic behavior continued during the proceedings is further evidence of his likely continuing inability to secure the assistance he would need to take over the farm operations. Findings 15 and 16 are supported by the evidence and are not clearly erroneous as a matter of law.

*Finding 17*

Husband challenges the factual finding that he failed to present evidence of his ability to qualify for refinancing of the approximately $5.5 million of debt for the farm mortgage and equipment. However, the trial court correctly found that Husband's 2021 income tax return showed that he had a gross income of only $2,619.00 that year. *See* Ex. LL, Ex. v. V at 229. And, unlike Wife, Husband did not provide any evidence that he would be approved for an adequate loan if the court entered an order giving him exclusive use and possession of the property. Rather, Husband merely "testified that he had made efforts to speak to the loan officer to secure [such] preapproval" but had

not actually obtained it.  Appellant's Br. at 16; Tr. v. III at 137-38.[3]  The trial court did not clearly err in finding that was insufficient evidence of an ability to secure refinancing.

[23]     Husband asserts that he, "like Wife, would use the land as collateral" to obtain such a loan, and that he "has extensive experience in obtaining loans for the farmland."  *Id*., citing Tr. v. IV at 112.  However, not only is this an impermissible request that we reweigh the evidence and judge witness credibility, but it also lacks support in the record; there is no testimony at the cited portion of the transcript discussing Husband's experience in obtaining loans or stating that Husband could use the land as collateral to obtain a loan.

*Findings 18 and 19*

[24]     Husband challenges findings 18 and 19 to the extent they find there was no evidence supporting deductions from Wife's portion of the marital estate due to alleged "missing grain" or Husband's "inheritance" of part of the farm.  Appealed Order at 6-7.  Husband alleges there is evidence of missing grain and cites to "Tr. Vol. Exhibits Vol. IV, C-O."  Appellant's Br. at 17.  However, those exhibits consist of ninety-five pages of documents, and Husband provides no specific page citations.  That is insufficient citation under Rules 46(A)(8)(a) and 22(C) of the Indiana Rules of Appellate Procedure, and "we will not

---

[3] We note that Husband's brief contains typographical errors that refer to Transcript volume II, rather than Transcript volume III.  Hereinafter, we simply cite to the correct transcript volume rather than noting Husband's typographical errors.

undertake the burden of combing the record on [Husband's] behalf." *Clark Cnty. Drainage Bd. v. Isgrigg*, 963 N.E.2d 9, 19 n.4 (Ind. Ct. App. 2012); *see also* Ind. Appellate Rule 22(C) (requiring that references to the record on appeal "shall be supported by citation to the volume and page where it appears in the Appendix, … Transcript or exhibits").

[25] Husband also asserts that evidence that Wife increased the profitability of the farm is not relevant to whether Husband should be awarded part of the real property. However, that is not the purpose for which the trial court cited that evidence; it cited the increased profitability as evidence that "financial improprieties, … such as selling grain for cash," were not taking place. Appealed Order at 6. And there is no indication that the trial court's findings relied upon loan officer Carmody's testimony that Wife and sons are not "liars," as Husband claims.[4] However, even if it had, Husband is incorrect that such testimony would not have been relevant to whether Wife and/or sons were hiding income from grain sales.[5]

[26] Husband also maintains that there was evidence that he inherited some of the real property from his parents, namely, his own testimony; however, his

---

[4] We note that Husband misstates the record when he asserts that "Carmody testified that he did believe that Wife was hiding grain…;" Carmody's cited testimony stated the opposite. *See* Tr. v. IV at 46-47. However, given the context, we assume that Husband's misstatement was merely a typographical error.

[5] In addition to being relevant, testimony about Wife's and sons' characters for truthfulness would be admissible under Rule of Evidence 608(a), as Husband had attacked their characters by accusing them of stealing and/or hiding grain. And, in any case, Husband did not object at any point to Carmody's testimony and has, therefore, waived the issue on appeal.

testimony was only that he obtained some real property through the settlement of a lawsuit, not through inheritance. *See* Appellant's Br. at 18; Tr. v. III at 112. The trial court's finding is supported by evidence that the property from Husband's parents was obtained through the settlement of a lawsuit. *See* Ex. 57, Ex. v. III at 142.

[27] The evidence supports trial court findings 17 and 18; Husband's contentions to the contrary are, at best, simply requests that we reweigh the evidence, which we will not do.

*Finding 21*

[28] Finally, Husband challenges the finding that "Wife has provided evidence of her ability to refinance the secured debt and to make an equalization payment to Husband." Appealed Order at 7. That finding cites Exhibit 55 as support. Exhibit 55 is a February 23, 2022, letter from MetLife Investment Management which states, in relevant part, that: Wife "inquired about a financing in the approximate amount of $11,300,000, secured by real property in Decatur and Rush Counties[;]" the bank reviewed the financial information Wife provided to it; and "subject to final determination of [Wife's] division of assets and our determination that the proposed collateral meets our loan to value requirements, we would be pleased to consider the financing of [Wife's] request." Ex. v. III at 140.

[29] Husband asserts that the letter in Exhibit 55 is not sufficient to support finding 21 because it "simply shows that there is a potential for approval, which is no

different than the evidence presented by Husband." Appellant's Br. at 19. Husband's contention is incorrect. First, Exhibit 55 is, as the court found, evidence of Wife's *ability* to refinance; the trial court never found that it was evidence of a final commitment to lend, nor was such a finding required in order to support finding 21. Second, Exhibit 55 is "different than the evidence presented by Husband," because Husband's only relevant evidence was his testimony that he "contacted" and sent financial information to a loan officer at Metropolitan Life to secure a refinancing loan but had not heard back from the bank yet. Tr. v. III at 138. He testified that he also contacted another bank but the loan officer would not "even consider looking at [his] status for preapproval" without a divorce decree. *Id.* at 139. The trial court did not err in determining that Husband's meager evidence is not equivalent to a bank letter stating that the bank would be "pleased" to consider granting Wife a loan for $11 million, subject to a final determination of the assets. Ex. v. III at 140. And we may not reweigh the evidence on appeal.

### *Conclusion*

[30] In sum, the challenged trial court findings are supported by the evidence and/or not contrary to law.

## Assets in the Marital Estate

[31] Husband alleges that the trial court erred by excluding from the marital estate alleged appreciation of the value of the real estate. Similarly, he asserts the trial court erroneously excluded farm inventory, farm accounts receivable, and farm

income allegedly accrued during the pendency of the dissolution proceedings. However, the trial court did not exclude any of those categories from the marital pot. *See* Appealed Order at 10. Thus, Husband's contentions are really a challenge to the trial court's choice of the *dates* as of which to value those assets.

[32] Regarding the value of the farmland and income therefrom, Husband asserts that the court erred in valuing it as of the end of 2020/beginning of 2021 because the land allegedly appreciated in value and produced income after that date and before the final hearing. Regarding the remaining assets, Husband contests the trial court's decision to value them as of the date the dissolution petition was filed—December 2019—rather than some date thereafter that would have accounted for additional accounts receivable and alleged appreciation of the value of farm inventory.

[33] In dissolution actions, trial courts are required by statute to divide the marital property "in a just and reasonable manner." Ind. Code § 31-15-7-4(b). "Indiana courts utilize a 'one-pot' method for calculating and distributing marital property, whereby all property is included in the marital pot and subject to division." *Crider*, 26 N.E.3d at 1048. The marital pot consists of all "property of the parties, whether: (1) owned by either spouse before the marriage; (2) acquired by either spouse in his or her own right … after the marriage[] and …before final separation of the parties; or (3) acquired by their joint efforts." I.C. § 31-15-7-4(a). There is a rebuttable statutory presumption

"that an equal division of the marital property between the parties is just and reasonable." I.C. § 31-15-7-5.

[34] After identifying the marital assets and debts, the trial court must choose a date for setting the value of the marital pot. "Generally, the marital pot closes on the day the petition for dissolution is filed." *Goodman v. Goodman*, 94 N.E.3d 733, 747 (Ind. Ct. App. 2018), *trans. denied*. However, the trial court "has discretion to set any date between the date of filing the dissolution petition and the date of the hearing for their valuation." *Id*. Further, "there is no requirement in [Indiana] law that the valuation date be the same for every asset." *Wilson v. Wilson*, 732 N.E.2d 841, 845 (Ind. Ct. App. 2000), *trans. denied*.

[35] As Indiana courts have repeatedly acknowledged, "the date selected for the valuation of an asset has the effect of allocating the risk of a change in the asset's value to one party or the other[; however,] *this allocation of risk is entrusted to the discretion of the trial court*." *Trabucco v. Trabucco*, 944 N.E.2d 544, 558 (Ind. Ct. App. 2011) (emphasis added) (citation omitted), *trans. denied*; *see also Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996) (specifically disapproving of the Court of Appeals' holding that a trial court abuses its discretion when it selects a valuation date that does not account for changes in value between the date of final separation and the final hearing); *Thompson v. Thompson*, 811 N.E.2d 888, 918 (Ind. Ct. App. 2004) ("So long as the date assigned by the trial court is between the final separation date and the date of the final hearing and the trial court's allocation of subsequent risk—expressed by the date selected—is not

clearly against the facts and circumstances before the court, we will not find an abuse of discretion."), *trans. denied*.

[36] We will affirm a trial court's valuation if it is within the range of values supported by the evidence. *Campbell v. Campbell*, 118 N.E.3d 817, 821 (Ind. Ct. App. 2019), *trans. denied*. The "burden of producing evidence as to the value of the marital property rests squarely on the shoulders of the parties and their attorneys." *Galloway v. Galloway*, 855 N.E.2d 302, 306 (Ind. Ct. App. 2006) (quotation and citation omitted). "A valuation submitted by one of the parties is competent evidence of the value of property in a dissolution action and may alone support the trial court's determination in that regard." *Henderson v. Henderson*, 139 N.E.2d 227, 235 (Ind. Ct. App. 2019) (quotations and citations omitted). Moreover, "'any party who fails to introduce evidence as to the specific value of the marital property at a dissolution hearing is estopped from appealing the distribution on the ground of trial court abuse of discretion based on that absence of evidence.'" *Perkins v. Harding*, 836 N.E.2d 295, 301 (Ind. Ct. App. 2005) (quoting *In re Marriage of Church*, 424 N.E.2d 1078, 1081 (Ind.Ct.App.1981)).

### *Real Estate*

[37] Each party submitted one real estate appraisal of the parties' farmland, and the trial court averaged those two appraisals to decide on the value of the real estate as of the end of 2020 (Wife's appraisal)/beginning of 2021 (Husband's appraisal). The trial court acted within its discretion in doing so, as the value it

assigned was within the range of the evidence provided. *See, e.g.*, *Alifimoff v. Stuart*, 192 N.E.3d 987, 1002 (Ind. Ct. App. 2022) (holding the trial court acted within its discretion when its assigned value of the real estate was based upon an average of the two values submitted by the parties), *trans. denied*.

[38] Husband contends that the trial court erred by not considering the appreciation in the real estate's value pending the final dissolution hearing. However, the trial court acted within its discretion in choosing the date by which to value the real estate and, thereby, assigning the risk of a future change in value. *See Quillen*, 671 N.E.2d at 102; *Trabucco*, 944 N.E.2d at 558. That allocation of subsequent risk—expressed by the valuation date selected—is not clearly against the facts and circumstances before the court. The only evidence regarding possible appreciation of the land pending the final dissolution hearing was the parties' testimonies that they believed the market price of farmland in the area had increased during that time. The trial court did not err in refusing to credit the parties' anecdotal testimony over the appraised values or in finding that anecdotal testimony insufficient to support a finding of increased value. Husband's contentions to the contrary are requests that we reweigh the evidence, which we will not do.

### *Farm inventory and accounts receivable*

[39] The trial court valued the farm inventory and accounts receivable as of the end of the month in which the dissolution petition was filed, i.e., December 31, 2019. *See* Appealed Order at 8, citing Exhibits 26, 27, and 29. Husband

maintains that the trial court erred by not including the increase in the value of the inventory and accounts receivable after December 2019; he points to exhibits showing that the price of those items increased from $729,248.96 in December 2019 to $1,249,830.37 as of October 2021. However, again, the trial court's allocation of subsequent risk—expressed by the selected valuation date for inventory and accounts receivable—is not clearly against the facts and circumstances before the court. The valuation date selected was between the date of the filing of the dissolution petition and the date of the hearing, and the value assigned was within the range of values supported by the evidence. That is, Wife provided evidence that the total bank accounts, farm inventory, and accounts receivable as of December 31, 2019, were $729,248.96, and that is the approximate value the court assigned to those assets.[6]

### *Farm income*

[40]     Husband asserts that the trial court erred by failing to include income from grain sales in 2019 through 2021 in the marital pot. The trial court did not provide a separate category in the marital pot for farm income. Instead, it

---

[6] Wife's Exhibit 29 is a balance sheet showing the value of assets as of December 31, 2019. Ex. v. II at 180. According to that exhibit, the total amount for inventory and accounts receivable was $728,716.78. *Id.* The $729,248.96 number used by the court for inventory and accounts receivable included $532.18 from bank accounts. That is, in its calculation of assets, the trial court erroneously counted the $532.18 from bank accounts twice: once in the $729,248.96 number it labeled "Inventory and acct rec.," and once again in the following line where it included $532.18 labeled "Bank Accounts." Appealed Order at 10. However, neither party raises that error. Moreover, the $532.18 error is *de minimus* given the multimillion-dollar assets at issue; therefore, the error is harmless. *See, e.g.*, *D & M Healthcare, Inc. v. Kernan*, 800 N.E.2d 898, 900-01 (Ind. 2003) (discussing the "*de minimis* doctrine").

chose to value the farm and its income by averaging the parties' real estate appraisals, both of which included only the income of $183,000 from the sale of part of the farm, and both of which had valuation dates as of the end of 2020/beginning of 2021. Moreover, neither party included farm income produced during the pendency of the dissolution proceedings in their proposed divisions of the property. *See* Ex. 47, Ex. v. III at 114 (Wife's proposed division); Ex. AA, Ex. v. IV at 42 (Husband's proposed division). Again, the trial court acted within its discretion when it chose to value the real estate, including the income of $183,000 from a real estate sale, as of the end of 2020/beginning of 2021 by averaging the parties' appraisals. The trial court's allocation of a subsequent risk of a change in value—expressed by the selected valuation date—is not clearly against the facts and circumstances before the court.

[41]     Thus, the evidence of income from grain sales in years subsequent to 2020 is not relevant. However, given that the court chose to value the farm, including its income, as of the end of 2020/beginning of 2021, farm income from the years 2019 and 2020 should be included in the marital pot. *See, e.g.*, *Smith v. Smith*, 854 N.E.2d 1, 6 (Ind. Ct. App. 2006) ("Net income from the property bought before or during the marriage is a marital asset."). Nevertheless, as we explain below, we conclude that the trial court's decision not to include that income in the marital pot was harmless error.

[42]     Income earned by marital property "after the petition for dissolution was filed and before the court's valuation date" must be considered a marital asset under

Indiana Code Section 31-15-7-4. *Id*. at 7. However, where the income so produced is "entirely through one party's efforts and investment without the other's participation," we have determined that it would not be appropriate to award such income to the non-participating party. *Hudson v. Hudson*, 176 N.E.3d 464, 479 (Ind. Ct. App. 2021), *trans. denied*. Moreover, the improper exclusion of an asset from the marital estate may be harmless error where the evidence supports an unequal distribution of that asset. *See Helm v. Helm*, 873 N.E.2d 83, 89 (Ind. Ct. App. 2007); *see also Smith*, 854 N.E.2d at 6 ("[W]e will reverse a property distribution only if there is no rational basis for the award.").

[43] Such is the case here. The evidence establishes that the farm income in the years 2019 through 2022 was produced solely through Wife's efforts and not at all through Husband's efforts. Husband was incarcerated during the year 2019 and did not help at all with the farm operations during that year or at any time thereafter. In fact, Husband refused to provide his essential participation to extend the operating line of credit through 2020, thereby placing the entire farm operation in jeopardy. It was only through Wife's efforts in working the farm with her sons and obtaining financing that the farm was not only saved, but actually produced income. Therefore, there was a rational basis for the trial court's failure to divide the 2019 and 2020 farm income between the parties.[7]

---

[7] The fact that the farm income produced during dissolution proceedings was all due only to Wife's efforts is what distinguishes this case from *Smith*, 854 N.E.2d 1, cited by Husband, and other rental income cases. That is, in those cases, there was no evidence that the rental income was obtained solely through the effort or investment of one party.

Any error in the failure to include that income in the marital pot was harmless, as the evidence supported an award of that income to Wife. *See Helm*, 873 N.E.2d at 89.

## Marital Debts

[44] As he did with the marital assets, Husband challenges the date of valuation the trial court chose for the marital debts. Husband provided no evidence of the total marital debt as of any date.[8] However, he points to Wife's Exhibit 56, Ex. v. III at 141, which showed a decrease in the marital debt as of October 20, 2021, and August 18, 2022, and he maintains that the trial court should have accounted for that decrease in the debt. However, for the same reasons discussed above, we hold that the trial court's chosen valuation date was within its discretion.

[45] The trial court chose to value the marital debt as of the date of the petition for dissolution, i.e., December of 2019. Wife provided evidence showing the debt as of December 31, 2019, was a little over $7.5 million, and the trial court cited that evidence in support of its calculation of the total debt value of $7,612,937.50 as of December 2019. Appealed Order at 9, citing Exhibit 44. Thus, the debt value assigned by the court was not clearly against the facts and

---

[8] While Husband's "Proposed Division of Property," contained in Exhibit AA, shows the marital debt as $3,839,257.00, that exhibit does not provide a valuation date nor does it contain all of the marital debts. Therefore, the trial court did not abuse its discretion to the extent it discounted the debt information in Exhibit AA.

circumstances before the court; rather, it was within the range of values supported by the evidence. And, by choosing the valuation date of December 2019, the trial court necessarily allocated to Wife the risk of any subsequent increase or decrease in the amount of debt. It was within the trial court's discretion to do so. *See, e.g.*, *Trabucco*, 944 N.E.2d at 558.

[46]   Husband asserts that it was "unjust" to assign the debt amount as of December 2019 rather than the lower debt values in subsequent years, and he points out that Wife paid down the debt with income produced by the farmland while the dissolution action was pending. Appellant's Br. at 25-26. However, as we noted above, the farm produced income during that time period solely due to Wife's farming efforts and procurement of financing, the latter of which was actually hindered by Husband's refusal to cooperate with Wife. We find no injustice in the trial court's valuation of the marital debt; rather, the court acted within its discretion in choosing the valuation date and thereby allocating the risk of a subsequent change in the amount of the debt.

## Payment of Husband's Personal Expenses

[47]   Finally, Husband contends that the trial court erred by reducing Wife's equalization payment by the amount she paid to Husband for his personal expenses while the dissolution action was pending, without similarly accounting for the amount of Wife's personal expenses during that time period. This claim fails for several reasons. First, Husband did not make this assertion in the trial court; rather, his proposed division of the marital property did not

include the amount of anyone's personal expenses. *See* Ex. AA, Ex. v. IV at 42. Second, the record contains no evidence of the value of Wife's personal expenses while the dissolution was pending, and a party who fails to introduce evidence as to the specific value of the marital property is estopped from alleging an abuse of discretion in the property distribution based on that absence of evidence. *See Perkins*, 836 N.E.2d at 301. And, finally, Husband's expenses were paid using income from the farm that Wife obtained through her own efforts alone and despite Husband's refusal to cooperate in obtaining refinancing of the farm. There is nothing inequitable in crediting Wife with the amount she paid for Husband's personal expenses with farm income that she, alone, produced while the dissolution was pending. *See Hudson*, 176 N.E.3d at 479 (finding it inappropriate to award income produced entirely through one party's efforts and investment to the non-participating party).

## Conclusion

[48]     The trial court findings challenged by Husband are supported by the evidence and/or not contrary to law. The trial court did not abuse its discretion by valuing the farm and its income as of the end of 2020/beginning of 2021, nor did it err in valuing the farm inventory, accounts receivable, and marital debt as of the date of the dissolution petition, i.e., December 2019. And the trial court acted within its discretion when it decreased Wife's equalization payment by the amount she paid Husband for his personal expenses while the dissolution was pending.

Affirmed.

May, J., and Felix, J., concur.